FIRST WISCONSIN TRUST COMPANY, Trustee, and another, Respondents, vs. BOARD OF TRUSTEES OF RACINE COLLEGE and others, Defendants: NASHOTAH HOUSE and another, Appellants.

*March 9—May 25, 1937.*

For the appellant Nashotah House there were briefs by *Wood, Warner & Tyrrell,* and oral argument by *Jackson M. Bruce,* all of Milwaukee.

For the appellant DeKoven Foundation for Church Work there were briefs by *F. F. & J. V. Norcross,* attorneys, and *John V. Norcross* and *William Ruger* of counsel, all of Chicago, Illinois, and oral argument by *J. V. Norcross.*

For the respondent Taylor Orphan Asylum there were briefs by *Thompson & Monk,* attorneys, and *William D. Thompson* and *John F. Thompson* of counsel, and oral argument by *William D. Thompson* and *Fulton Thompson,* all of Racine.

The following opinion was filed April 7, 1937:

ROSENBERRY, C. J. We shall attempt to state only such facts as are necessary to disclose the questions raised and decided. The Board of Trustees of Racine College was incorporated by ch. 65, Laws of 1852. By the terms of that act Roswell Park, Elias Smith, Isaac Taylor and others were created a body corporate. By the act of incorporation it was the duty of the board of trustees faithfully to apply all funds by them collected in erecting suitable buildings supporting the necessary officers, instructors, etc. It was expressly pro-

vided that no religious tenets or opinions should be requisite to entitle any person to be admitted as a student of said college. Said act of the corporation was amended by ch. 28. P. & L. Laws of 1861. By that act it was provided that the trustees must be at the time of their election a communicant of the Protestant Episcopal church, and that the bishop of the Protestant Episcopal church within whose territorial limits the college was located, the president of Nashotah, and the rector or head of the faculty should be ex-officio trustees.

Isaac Taylor, one of the incorporators, died leaving a widow, Emerline A. Taylor. On October 20, 1866, she made a will and three days thereafter a codicil.

"Second. I give and devise unto my executors Daniel P. Rhodes of Cleveland, Ohio, George Murray and James H. Kelley of Racine, Wisconsin, the sum of thirty thousand dollars to hold in trust for Racine College in the city and county of Racine in the state of Wisconsin of which Dr. DeKoven is rector and principal to aid in the erection of buildings for said college, and also the further sum of thirty thousand dollars to hold in trust for said college to constitute a permanent fund not to be used—but to be kept well invested and the interest or income to be used for the keeping such buildings in repair and enlarging if necessary and also the further sum of five thousand dollars to hold in trust for said college to be expended for such purposes as the officers of said college may deem best for said college. The said trust funds are to be paid to said college when it shall be legally empowered to receive said bequests and expend the same in the manner indicated in this will—

"Said buildings and the bequests are for the education of the orphan children of deceased Episcopal ministers in the state of Wisconsin, first, and afterwards if the fund shall be large enough such other children as the managers of said college shall choose to take in.

"Third. I give and devise unto Mrs. C. A. Dyer—Mrs. Margaret Perrine—Mrs. George Murray—Mrs. John F. Gould and Mrs. John Tayley of the county of Racine, state of Wisconsin the sum of thirty thousand dollars to hold in

trust to erect an orphan asylum in or near the city of Racine in the county of Racine, Wisconsin, and to support the same. Said asylum to be open for the reception of all orphan children in said county and such other poor neglected and destitute children as the managers by law or their rules may agree to receive. Said trust fund is to be paid to such asylum as soon as one shall be duly incorporated and legally empowered to receive and use said fund for the purposes above specified.

"This bequest is made as a memorial to the memory of my late husband Isaac Taylor and in fulfillment of his wishes. . . .

"Twenty-fifth. I give and devise unto the Neshota Mission in the town of Delafield state of Wisconsin five thousand dollars. . . .

"Thirty-eighth. All the rest and residue of my estate left after paying the expenses of administration I give and devise unto my said Executors Rhodes, Murray and Kelley (. . .) to hold in trust for said contemplated orphan asylum for said county of Racine, the principal to be kept invested in such manner as will pay a good interest but not to be used for any purpose, the interest or income only to be used for the maintenance and support of said asylum The same to be paid to said asylum by my said executors as hereinbefore directed. . . ."

Sec. 1, ch. 90, P. & L. Laws of 1867, provided:

"Sec. 1. The board of trustees of Racine College, a corporation created and existing under and by virtue of the laws of the state of Wisconsin, are hereby authorized and empowered to accept, receive and have the bequest made to 'Racine College' by the last will and testament of Mrs. Emerline A. Taylor, now deceased, and to have, use and employ the same for the purposes named in such will and testament. . . ."

By ch. 5, Laws of 1876, sec. 4, ch. 65, Laws of 1852, was amended to read:

"The two following named persons shall be ex-officio trustees of the said corporation: The bishop of the Protestant Episcopal church, within whose territorial limits the said institution is located, and the president, warden, or head of said institution. . . ."

On January 26, 1897, the Board of Trustees of Racine College filed a petition in the circuit court entitled:

"In the Matter of the Administration of One of the Trusts created by the will of Emerline A. Taylor, deceased, known as the Taylor Foundation."

The petition recited that its mortgage note for $25,000 and the remaining $5,000 of the $30,000 trust fund bequeathed by paragraph second of the will were in the hands of one George Armour, who never had been appointed as a trustee and who was willing to transfer said securities to a trustee to be appointed by the court. Upon proceedings duly had, John B. Winslow was appointed such trustee. The order provided:

"The duties of such trustee shall be simply to take care of the securities belonging to said fund and to invest and reinvest the same when collected, upon first mortgage security; also to collect all sums of interest and from time to time pay over the same to the warden of the college, to be used for the purposes of the trust."

On October 2, 1920, a petition was filed from which it appeared that John B. Winslow had died, and prayed that the plaintiff herein might be appointed successor trustee, and that the plaintiff was appointed trustee of the fund known as the "Taylor Foundation for Racine College" in succession to the Hon. John B. Winslow, former trustee, deceased. From time to time the Board of Trustees of Racine College sold parts of its real estate until on November 29, 1935, a parcel containing about thirty-two acres remained upon which are located the college buildings and also the burial tombs of James DeKoven and Roswell Park, each a former warden of said college. In the refectory and chapel are numerous memorials and memorial windows. The board of trustees procured a loan from Nashotah, which was secured by a mortgage. The mortgagor having defaulted, fore-

closure proceedings were begun, and on January 9, 1934, a judgment of foreclosure was entered. In November, 1935, there were in addition to the mortgage other liens which made a total lien indebtedness of more than $138,000.

Racine College from the time of its foundation until some time in the nineties was a school of collegiate rank, granting degrees, and having about one hundred students in attendance. Two of its early wardens were James DeKoven and Roswell Park. Dr. DeKoven was an Episcopal minister of high standing. Some time in the nineties, Racine College ceased to grant degrees, but continued as a boys' preparatory school until 1919 or 1920, when its academic activities ceased. Thereafter from time to time the college buildings were used by lessees who conducted preparatory schools, and also were used for summer conferences of the Episcopal. church. Prior to November, 1935, such use of the property had ceased and the buildings were unoccupied. No children of deceased Episcopal ministers of the state of Wisconsin were cared for on the premises. The income from the trust fund has been used for the maintenance and repair of Taylor Hall.

On April 8, 1867, the persons named in paragraph third of the Emerline A. Taylor will incorporated the Taylor Orphan Asylum—

"for the purposes of establishing and maintaining an asylum at any place in or near the city of Racine, in said county of Racine; and the objects and purposes of the corporation are hereby declared to be the care, maintenance and education of orphan and indigent children, and the children of indigent parents who are unable to provide for their offspring."

Sec. 9 of the act (ch. 340, P. & L. Laws of 1867) required:

"No political or religious test shall ever be required as a qualification for office or for admission to the benefits of this corporation."

Nashotah being the successor of Neshota Mission mentioned in paragraph twenty-fifth of the will was incorporated as—

"a college of learning and piety for the education of men for the sacred priesthood of the Catholic Church,"—

meaning thereby the education of men for the ministry of the Protestant Episcopal church. Nashotah now owns and is operating a school for that specific purpose.

The DeKoven Foundation for Church Work was incorporated on November 29, 1935, and on that day the Board of Trustees of Racine College conveyed to it all the land and buildings formerly the property of Racine College, included and described in the judgment of foreclosure entered in said case of Nashotah House v. Board of Trustees of Racine College; that the purposes of said DeKoven Foundation are not only to train and care for orphans as stated in the articles of incorporation but also—

"to acquire from the board of trustees of Racine College, a corporation of Wisconsin located at Racine, Wisconsin, and to preserve, protect and keep in repair, the grounds and buildings located at Racine, Wisconsin, formerly used for the educational purposes of said Racine College, including the building known as Taylor Hall, and also including the tombs and burial places (located upon said grounds) of the late James DeKoven and the late Roswell Park, founders and former wardens of said Racine College."

The Foundation has also for its express purpose the using of the grounds and buildings as a meeting place for conferences, assemblies, and retreats of members of the Protestant Episcopal church and organizations affiliated therewith. Other objects, purposes, and activities which it is proposed to carry on are set out at considerable length, and all have to do directly or indirectly with activities carried on by those connected with the Protestant Episcopal church.

The trial court was of the view that the dominant purpose of the testatrix in creating the trust in favor of Racine College was to benefit orphans of Wisconsin and primarily of Racine county; that the charitable interest of Emerline A. Taylor and her husband centered in Racine county; that the Orphan Asylum has at all times been and now is nonsectarian and no religious affiliation is required for admission thereto. The court concluded as a matter of law:

"That it was and is the primary purpose and intent of the testatrix, as gathered from and implied in her last will and testament, to provide for orphan and neglected children of Racine county, and thereafter, of the state of Wisconsin, in so far as her specific and residuary bequests would permit; that her leading purpose was to provide nurture and education for orphan and neglected children unable to provide for themselves, as shown in paragraph third of her will; that her secondary purpose was to provide for advanced or college education of those of said orphan children who might be available for college education at Racine College; that Racine College having ceased to function (as it functioned at the time of the death of the testatrix) and having passed out of existence as an educational institution, such as testatrix had in contemplation when her will was made, the court finds and concludes Taylor Orphan Asylum to be the agency best fitted and adapted to carry out her primary charitable purpose of nurture and education of orphan and other children as prescribed by her will, and that said Taylor Orphan Asylum is entitled to the income of the $30,000 trust fund bequeathed to Racine College charged with the duty of carrying out as nearly as possible, within its institution or elsewhere, the uses and purposes for which said provision was made."

The court then directs the income to be paid to the Taylor Orphan Asylum, together with accumulated income "to be used for the benefit of orphans in its charge." The Foundation, the Orphan Asylum, and Nashotah each claim that they

are engaged in work which more nearly carries out the intent of the testatrix than any other agency claiming the fund.

One or two questions must be disposed of before we enter upon a consideration of the principal question. On behalf of the Orphan Asylum it is contended that the settlor having died in 1866, at which time it was held that the *cy pres* doctrine was not in force in this state, the construction of the will under consideration cannot be aided thereby; that there is ground for the contention made on behalf of the Orphan Asylum will appear from a consideration of the opinion of the court in *Harrington v. Pier* (1900), 105 Wis. 485, 82 N. W. 345.

The statute (sec. 2081, now 231.11) was first amended by ch. 170, Laws of 1917, which became sub. (7), and which provides:

"No trust for charitable or public purposes, whether in real or personal property, shall be invalid for indefiniteness or uncertainty where power to designate the particular charitable or public purpose or purposes to be promoted thereby is given by the instrument creating the same to the trustees, or to any other person or persons."

The statute was further amended by ch. 413, Laws of 1933, which became sec. 231.11 (7) (b), (c), and (d), Stats. These amendments to the section did little more than declare existing law. In the case of *Kronshage v. Varrell* (1904), 120 Wis. 161, 164, 97 N. W. 928, the court said:

"This court has decided, disregarding the reasons which some others have deemed controlling, that there are inherent in our courts all the strictly judicial powers ever exercised by the chancellor or the High Court of Chancery of England to find means to carry into effect a charitable purpose entertained by a testator or grantor; that such courts lack only the prerogative *cy pres* power enjoyed by the sovereign to apply all goods devised to any charitable purpose, to purposes never declared or even entertained by the donor, under certain circumstances, which prerogative power was in some

degree exercised by the chancellor by delegation from the sovereign. All that is necessary is that the devisor shall place his property in trust, and designate a charitable purpose of his own narrower than the field of charity generally. The courts can and will then see to it that a trustee is provided, if none be designated, and that means will be found to apply the property to the purpose, if no method be prescribed."

So far as the present case is concerned, it can be decided upon general principles of law entirely apart from the statute. As pointed out in *Harrington v. Pier, supra,* in some of the earlier cases the *cy pres* doctrine was repudiated. It is quite clear that what was repudiated was the prerogative power exercised by the chancellor, not as a judge, but as a representative of the Crown. For an extensive collection of authorities, see note relating to the "Enforcement of General Bequest for Charity or Religion," 14 L. R. A. (N. S.) 49.

We need go no further in this case than to hold that under the law as it existed prior to the amendments of the statute, applying liberal rules of construction, it is the duty of the court to prevent a lapse of the trust created in favor of Racine College. The question for decision is, which one of the three claimants most nearly approximates or carries out the purpose which the testatrix had in mind in the creation of the trust and most nearly carries out her intention as expressed in her will? *Harrington v. Pier, supra.*

A great deal of speculative comment might be indulged in as to what the testatrix intended and did not intend to do. Such speculation tends to obscure rather than reveal her purpose. What she intended is to be determined from the language she used, construed in the light of the circumstances. There can be no doubt that the trust created for Racine College is a charitable trust within the meaning of that term as used in secs. 230.15 and 231.11 (5), Stats. *Will of Kavanaugh* (1910), 143 Wis. 90, 126 N. W. 672. It being a charitable trust, it is the duty of the court, the

named beneficiary being no longer in existence, to apply the property to a purpose which approximates as nearly as possible the purpose to which the testatrix intended it to be applied. The trial court was of the view that it was the primary intent and purpose of the testatrix in the creation of the trust for Racine College to provide for orphaned and neglected children of Racine county. It is considered that this conclusion is in the face of a clearly expressed intention that it should be used first "for the keeping such buildings in repair," which buildings were to be provided in part from funds derived from the trust. It is true that the will provides that "said buildings and the bequests are for the education of the orphan children of deceased Episcopal ministers," and such other children as the managers of the college may choose. This, however, is a provision from what is left over after the erection and maintenance of the buildings have been provided for. For many years, in fact ever since the death of the testatrix down to the time when this controversy arose, the trust has been so administered. It is quite true that the testatrix expected that the buildings to be erected and maintained would be occupied by Racine College. Her deceased husband was one of the incorporators of that college, a communicant of the Episcopal church, and probably the testatrix did not contemplate a time when an educational institution of the type of Racine College would not exist and have its home upon the campus of Racine College. True, she evidences in her will a concern for the care of orphans. That, however, she provides for by creating a trust which is still being administered for the benefit of the Taylor Orphan Asylum. The Orphan Asylum has no claim whatever upon the buildings and property which formerly belonged to Racine College. They are now owned by the Foundation, which is carrying on educational and charitable work in part at least for the benefit of orphans. While the type of education now being furnished in connection with

the Racine College property is not that which the testatrix had in contemplation, nevertheless the Foundation does three principal things: (1) It preserves and maintains the buildings which were erected in part at least by funds contributed by the testatrix; (2) it uses the property for educational and religious activities; (3) it cares for and educates orphan children; it is also an affiliate of the Protestant Episcopal church. Awarding the fund to the Orphan Asylum cuts off all but one of these considerations.

It is considered that the primary purpose of the testatrix was the erection and preservation of the buildings of Racine College for educational and charitable purposes, and that so long as the Foundation continues to occupy and so use the property it is entitled to the income from the funds in the hands of the plaintiff trustee to be used for the purposes designated in the trust. With respect to Nashotah, it does not own the buildings and therefore cannot care for and maintain them, nor does it render any service to orphans; it can carry on no educational activities upon the premises, the title to which is in the Foundation.

It is considered that the income from the trust should be awarded to the DeKoven Foundation subject to the limitations indicated in this opinion, that is, to its continued use for the charitable and educational purposes of the Foundation so long as they are carried on upon the premises in question.

*By the Court.*—Judgment appealed .from is reversed, and cause remanded with directions to enter judgment as indicated in this opinion.

A motion for a rehearing was denied, with $25 costs, on May 25, 1937.