NELSON and another, Respondents, vs. MADISON LUTHERAN HOSPITAL & SANATORIUM, Appellant.

*March 12—April 15, 1941.*

520

For the appellant there was a brief by *Sanborn, Blake & Aberg, Ernest H. Pett,* and *George G. Blake,* all of Madison, attorneys, and *Harold E. Hanson,* city attorney of Madison of counsel, and oral argument by *Mr. George G. Blake* and *Mr. Pett.*

For the respondents there was a brief by *Curkeet & Curkeet* of Madison, and oral argument by *William R. Curkeet.*

WICKHEM, J. The complaint of the plaintiff Nelson alleges that prior to his decease one Torger G. Thompson agreed and bound himself in writing to subscribe $50,000 for the purpose of erecting, equipping, and endowing a sanatorium in the city of Madison, this sum to be paid to such corporation as might be formed to carry out the enterprise; that the offer was made on the express condition that the sanatorium should be a Lutheran institution, located in Madison, and that at least $100,000 be paid by others in cash or bankable securities to help defray the cost of such institution; that the offer would not be binding on deceased or his estate unless said conditions were complied with within six years from the date of the offer; that defendant was organized on or about September 14, 1922, to carry out the purposes of the offer, and was authorized by its articles to build, con-

duct, and maintain a Lutheran hospital and sanatorium situated in Madison; that subsequent to the organization of defendant it solicited and obtained a subscription of $500 from plaintiff, all of which has been paid by plaintiff to defendant; that Torger Thompson died on November 13, 1923, and that on October 20, 1927, it was represented to the county court of Dane county by defendant that the sum of $100,000 upon which the gift was conditioned had been procured in cash and bankable paper; that on that date an order was made by the county court that the sum of $50,000 be paid to defendant pursuant to the offer of decedent; that in his last will and testament Thompson bequeathed the residue of his estate to the Regents of the University of Wisconsin, and that had the sum of $50,000 not been paid to defendant it would have constituted part of such residue; that the defendant has not constructed or erected such sanatorium, and has abandoned all intention of so doing; that due to the high cost of erecting a sanatorium, lack of interest on the part of Lutheran and other subscribers, and present economic conditions, it is impossible for defendant to carry out the purposes of the subscriptions, and the plaintiff is entitled to a return of his subscription; that plaintiff's subscription was made and paid with the understanding and upon the condition that such a sanatorium be built under all conditions specified by Thompson; and that all subscriptions for a like purpose were made upon the same understanding. Judgment was demanded that defendant render an accounting of all subscriptions received, together with expenditures, investments, and other dispositions; that defendant be adjudged trustee of all its property for the benefit of plaintiff and other subscribers; that a receiver be appointed; and that in the event it be held that plaintiff can bring this action only in his own behalf as an action at law, that he have judgment against defendant for the amount of his subscription with interest. After the demurrer had been filed by defendant

to this complaint there was an affidavit and order to show cause why the Union Trust Company, administrator of the estate of Torger Thompson, deceased, should not be allowed to intervene. Attached to an affidavit in opposition to the motion for intervention were true copies of the subscription of Torger Thompson, the decisions of the county court in the matter of the estate of Thompson in respect of claims of defendant, and the subscription agreement of plaintiff Nelson. Later by stipulation these papers were incorporated into the Nelson complaint and the complaint treated as amended to that extent. The complaint of the intervening plaintiff contains substantially the same allegations as those in the Nelson complaint, and in addition sets forth that defendant acquired a site for the proposed hospital on or about October 10, 1932, for the sum of $30,000; that it has never commenced erection of the proposed sanatorium on such a site; that in consequence of the abandonment by defendant of the project of building the hospital a substantial portion of the subscriptions obtained were never collected and have long since become uncollectible through the operation of the statute of limitations; that defendant at all times since the death of Torger Thompson has been without sufficient funds, and has been unable to raise sufficient funds to erect such a hospital or sanatorium as those who made the contributions contemplated and intended to be erected.

Since by amendment in accordance with a stipulation by the parties the Torger Thompson subscription agreement and that of plaintiff Nelson are inserted in the complaints, it is important to consider the terms of those agreements. The Thompson agreement recites an effort to secure the erection and location at Madison of a sanatorium by certain members of the Norwegian Lutheran church, the establishment of a committee looking to that end, and the affiliation of Thompson with this church. Thompson "agrees to subscribe and pay, for the purpose of the erection, equipment, and endowment

of a sanatorium in the city of Madison, Dane county, Wisconsin, the sum of $50,000, subject to the conditions and restrictions as hereinafter set forth." The following are the conditions and restrictions to which the agreement to subscribe is expressly subject: "(a) Said sanatorium shall be a Lutheran institution; (b) said sanatorium shall be located at Madison, Dane county, Wisconsin;" (c) the amount subscribed shall be payable when there shall have been subscribed and paid to the officers of a corporation to be organized or to the duly constituted committee the sum of $100,000, exclusive of the amount subscribed either in cash or bankable securities. Subsection (5) of the agreement provides that the conditions must be complied with within six years after the date of the agreement, and if not so complied with the offer shall not be deemed binding either upon Thompson or his estate. The agreement of plaintiff Nelson reads as follows:

"For the purpose of raising funds for a building for the Madison Lutheran Hospital and Sanatorium at Madison, Wisconsin, and in consideration of the pledges of others, I promise to pay. . . ."

In view of the demurrer, it must be taken as admitted that defendant has not commenced erection of the proposed sanatorium, has abandoned the building project, and has been unable to raise funds sufficient to erect the sanatorium; and that the project is impossible of fulfilment. Defendant contends that a charitable gift may not be reclaimed by the donor unless there was a condition attached to the gift or an express provision for a reverter. While it is conceded that the time has not yet arrived to consider application of the *cy pres* doctrine, defendant contends that it will ultimately be proper to apply this doctrine to preserve the trust and avoid return of the funds to the donors.

It is our conclusion that the trial court properly decided this case. The donations of Thompson and of Nelson were

gifts for a specific purpose, not general charitable gifts. If anything is plain in this case it is that there was a definite project offered for the consideration of Thompson and Nelson—the erection in Madison of a sanatorium under Lutheran auspices. This is the particular project for which Thompson and Nelson made their contributions. A mere glance at the subscription contract of Thompson makes this clear. The project is accurately described and precisely limited in the opening clause. It is again described in the promissory clause and the whole matter is virtually repeated in the conditions expressly attached to the promise of Thompson. Two of these conditions are that the sanatorium shall be a Lutheran institution and shall be located at Madison, Wisconsin. It is true that this might have been made a little more explicit by specifically stating a third condition—"the sanatorium shall be built," but that is so plainly to be implied from the fact that it is to be located in Madison and to be run under Lutheran auspices that its omission is not a matter of any significance. It is expressly provided in Thompson's contract of subscription that conditions of the subscription must be complied with within six years from the date of the contract of subscription. Certainly, it may be argued with considerable force that on this score alone defendants are not in a position to successfully attack the complaints by demurrer in view of the failure for so many years to carry out the projects. However, we shall not press that point because at all events it appears by the allegations of the complaints that the conditions have not been fulfilled and that the project has been abandoned and never will or can be carried out. Hence, we are not particularly concerned with the time limitation. In the case of Nelson, the contract is not so elaborate. Nelson simply promised to pay money for the purpose of raising funds for a building for the Madison Lutheran Hospital and Sanatorium at Madison, and

defendant at once asserts that there is no condition in this, no provision for a reverter or a return of the money in case of abandonment, and no possibility of introducing such conditions and provisions into the contract by parol; that this is a case for the application of the *cy pres* doctrine; and that a charitable trust cannot fail where this doctrine is applicable. The nature of the *cy pres* doctrine and its materiality here has been earnestly and ably argued by defendant, but we think that there is little occasion for an elaborate re-examination of that subject. The doctrine has been considered and discussed at length in *Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345, and *First Wisconsin Trust Co. v. Board of Trustees,* 225 Wis. 34, 272 N. W. 464. So far as this doctrine is recognized in Wisconsin, it is simply a doctrine of liberal construction. It applies only where a general charitable purpose can be found in the terms of a bequest or gift, and the specific purpose of the bequest or gift has become impracticable or impossible. There is nothing in the contracts of subscription in this case to give one shred of support to the notion that the subscribers intended or disclosed a general charitable purpose. The gifts were to a single definite building project, extremely limited in scope, and to nothing else. The project has failed and has been abandoned according to the allegations of the complaint. By no process of construction may an alternative purpose be found. This being true, the fund must be returned to the donors even in the absence of express conditions or provisions for a "reverter." 2 Restatement, Trusts, § 401 (1), comment *a,* states:

"*No reverter for breach of trust.* In the absence of a limitation or condition in the terms of the trust, a charitable trust does not fail merely because of the failure of the trustees to carry out the charitable purposes, whether by failing to use the property for the proper purposes or by diverting the trust property to other purposes, as long as it is possible and practicable and legal to carry out the designated chari-

table purpose. The remedy for a breach of trust is by suit to compel the trustees to perform the trust and to make restitution for the breach of trust, but not to impose a resulting trust for the estate of the settlor. If it becomes impossible or impracticable or illegal to carry out the trust, a resulting trust will arise if, but only if, the settlor did not manifest a more general intention to devote the property to charitable purposes."

This comment states the law applicable here. If the complaint disclosed merely a failure of the trustees to use the property for proper purposes a different result might be reached as indicated in the comment. Where, however, as here, it must be taken as a fact that it is impossible or impracticable to carry out the trust and the settlors manifested no intention to devote the property to general charitable purposes, a resulting trust arises regardless of the absence of conditions or of a reverter clause. This is in accord with the overwhelming weight of authority. For a collection of cases see 38 A. L. R. 44. We see no occasion to elaborately review the many cases cited by defendant. They are all cases in which the court was able to discern a general charitable purpose. Neither do we deem it necessary elaborately to consider the scope and effect of sec. 231.11 (7) (c) and (d). This subsection was enacted in 1933, and pars. (c) and (d) read as follows:

"(c) In the absence of a clearly expressed intention to the contrary, no trust or other gift for charitable or public purposes whether in real or personal property shall be invalid because the specific method provided by the donor for the accomplishment of the general purpose indicated by him is or becomes for any reason impractical, impossible, or unlawful.

"(d) Where the fulfilment of the special purpose expressed in a trust or other gift for charitable or public purposes is or becomes impracticable, impossible or unlawful, it shall be the duty of the courts by a liberal construction of the trust or gift to ascertain the general purpose of the donor and to carry it into effect in the nearest practicable manner to the

expressed special purpose; provided, however, that the right of visitation of a living donor shall not be held to be impaired by anything contained in this subsection."

A mere casual reading of the section discloses that its operation is dependent upon discovery of a general charitable purpose.

*By the Court.*—Orders affirmed.