ESTATE OF ROBINSON: MOWREY and others, Trustees, Appellants, vs. WEBSTER, Administrator, Respondent.*

*December 5, 1945—January 8, 1946.*

* Motion for rehearing denied, with $25 costs, on March 12, 1946.

206

*Francis E. McGovern* of Milwaukee, for the appellants.

For the respondent there was a brief by *H. S. Winnecour* and *Jack N. Eisendrath,* attorneys, and *George D. Prentice, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Winnecour.*

A brief was also filed by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, as *amicus curiæ.*

FOWLER, J.    From the foregoing statement of facts it appears that the will of Florence Porter Robinson was duly admitted to probate by the county court of Milwaukee county, and the judgment so admitting it was affirmed by this court. The will created a charitable trust and the judgment before us for review terminated that trust as "impossible or impracticable of fulfilment" and adjudged that the trust property be distributed to the heirs at law of the testatrix as they shall be determined by the county court upon proofs of heirship later to be made.

The will provides for two sets of trustees, one set consisting of three women trustees whose duty it is to manage the trust property and add its income to the corpus until a sufficient corpus is accumulated to yield an income of $6,000 a year and that they then pay that income to the Regents of the University of Wisconsin, and the other set consisting of the Regents of the University of Wisconsin whose duty it is to establish and to maintain out of income received from the women trustees, a professorship to be held by a woman and pay over to the occupant of the professorship the $6,000 income when it is received by them.   That two kinds of trustees may exist together is indicated in 1 Bogert, Trusts and Trustees, p. 372, sec. 122.

The judgment of the court terminating the trust is proper if a finding of fact is permissible that the trust property cannot possibly ever amount to enough by adding income to corpus

to yield $6,000 annually. 4 Bogert, Trusts and Trustees, p. 2914, sec. 997, note 61 ; p. 2930, sec. 1002, note 32 ; *Will of Stack,* 217 Wis. 94, 100, 101, 258 N. W. 324. But from what was said and done in the *Stack Will Case* and in the case of *Estate of Thronson,* 243 Wis. 73, 75, 9 N. W. (2d) 641, when it appears that if the main purpose of a will creating a trust cannot be accomplished by continuing the management of the trust according to the direction of the will but may be accomplished by deviating the management from that specified by the will, deviation should be ordered by the court having supervision of the trust in order to effect the main purpose. It is plain that the main purpose of the instant will was to procure the establishment of the professorship and its maintenance from the income eventually to be accumulated from the trust property. Such deviation is expressly authorized in case of charitable trusts by sec. 231.11 (7) (d), Stats. The statute reads :

"Where the fulfilment of the special purpose expressed in a trust or other gift for charitable or public purposes is or becomes impracticable, impossible or unlawful, it shall be the duty of the courts by a liberal construction of the trust or gift to ascertain the general purpose of the donor and to carry it into effect in the nearest practicable manner to the expressed special purpose. . . ."

The brief of the attorney general filed herein as *amicus curiæ* points out that the expense of the administration of trust funds by the University of Wisconsin is .00147 of the corpus, less than $30 a year for administering $20,000. The annual account of the trustees filed in the county court shows gross income of $692.31 from the trust property in the year 1943. Offsetting this are expenditures for attorney's fees, $500, trustees' fees, $225, inheritance tax, $100, and incidental expenses $48, aggregating $923. The 1944 account shows gross income $603.87, and offsetting this are items for bond of trustees, $135, trustees' fees, $300, attorney's fees,

$476, incidental expenses, $94, total $1,005. The total of attorney and trustee fees for the eight years the trustees have had charge of the trust property is $4,421. If the property were administered for $30 a year it is obvious that sometime its accumulations would yield an income of $6,000 a year. The finding of the trial court that the trust property will never yield $6,000 a year is based on the hypothesis that the management of the trust property will be continued as specified in the will. We cannot say that this finding is not supported by the evidence. But it is obvious that if the property is taken over in trust by the Regents of the University to manage the expense of the present management above mentioned will be obviated, and as above stated the main purpose of the will will eventually be accomplished.

From the trial judge's written opinion it appears that he was of opinion that the passing of the motion of the Board of Regents rescinding their acceptance of the trust imposed on them by the will operated as a lawful withdrawal of their acceptance and left no possibility of the professorship being established and that this was a ground for termination of the trust.

The briefs of the appellants and of the attorney general contend that the Board of Regents having once accepted the trust imposed on them by the will had no power to withdraw their acceptance. The case of *Maxcy v. Oshkosh,* 144 Wis. 238, 128 N. W. 899, 128 N. W. 1138, supports this contention. There is no difference in principle between the case of the city of Oshkosh having no right to refuse to carry out a charitable trust that it has accepted and the Regents of the University having no such right. *Drury v. Natick,* 10 Allen (92 Mass.), 169; *Attorney General v. Lowell,* 246 Mass. 312, 141 N. E. 45; *Kibbe v. Rochester* (D. C.), 57 Fed. (2d) 542, support the proposition. It is to be noted that *Drury v. Natick, supra,* was considered in the *Oshkosh Case, supra,* as supporting the decision there made. The cases of *Langdon v. Congre-*

*gational Society of Plymouth,* 12 Conn. 113, and *Hansen v. Oregon Humane Society,* 142 Or.. 104, 18 Pac. (2d) 1036, also inferentially support the proposition that the regents had no power to rescind their resolutions of acceptance, as the defendants in these cases were corporations whose existence would continue indefinitely, and the same reason for applying the rule of those cases to them applies to a municipal corporation.

It is true that in the cases above cited the municipalities actually received the trust property, while here the regents have as yet received nothing. But the trustees have been administering the property in reliance on the acceptance of the regents, and the trust has been administered by the court relying on such acceptance. Under these circumstances the regents had no power to rescind their resolutions of acceptance. It is also to be noted that as the University of Wisconsin authorities by acceptance of the trust of establishing and maintaining a professorship as provided for by the will, and thereby preventing the managing trustees of the trust from negotiating with the authorities of the University of Chicago to establish the chair and carry out the trust, is estopped from declining the trust after the five-year period for creating the trust had expired.

However, while the Board of Regents had no power·to rescind their acceptance of the trust, their acceptance of their trusteeship did not impose on them the duty of administering the trust imposed on the women trustees. Their acceptance imposed the duty of establishing and maintaining the professorship free from the burden of administering the trust property. It is in the discretion of the regents now to refuse to take on themselves that burden if they see fit to do so.

Under the circumstances we consider that the judgment of the county court should be reversed with direction to the county court to vacate the judgment under review' and to tender to the Regents of the University of Wisconsin appointment as successor trustees to the women trustees with all the

powers and subject to all the duties of such trustees; and with provision that if the Board of Regents accept such appointment judgment be entered dismissing the instant petition; and with provision that if the Board of Regents decline such appointment the judgment under review be reinstated.

*By the Court.*—The judgment of the county court is reversed with direction for further proceedings in accordance with the opinion. No costs will be allowed in this court except the appellants will pay the clerk's fees.

* Motion for rehearing denied, with $25 costs, on March 12, 1946.