FAIRBANKS and another, Appellants, vs. CITY OF APPLETON, Respondent.

*October 24—November 26, 1946.*

*John A. Lonsdorf* of Appleton, for the appellants.
*Harry P. Hoeffel* of Appleton, for the respondent.

FRITZ, J.   The facts material on this appeal are as follows. Edith C. Fairbanks died in May, 1934, at the age of seventy-seven years.   Her will, dated June 24, 1929, and probated May 22, 1934, provided that after certain bequests,—

"All the rest and residue of my estate both real and personal shall be converted into cash, and I hereby give, devise and bequeath said sum to the city of Appleton, Outagamie county, Wisconsin, in trust for the uses and purposes hereinafter mentioned.   It is my will and wish and I direct that said sum of money be used by the city of Appleton for the erection and maintenance of an Old People's Home in the city of Appleton where elderly people may go and live and enjoy the comforts of life at reasonable rates and for reasonable compensation.   This trust is given by me on condition that money

used to create said trust fund shall be used for no other purposes except the uses and purposes outlined herein."

On October 23, 1934, all of the residue of the estate was assigned to the city of Appleton by a final decree in which,—after reciting that the city "has accepted the gift made to it by the testatrix upon the conditions outlined in said will,"—it was provided,—

"Wherefore it is ordered and adjudged, . . . That the residue of said personal estate . . . be and the same is hereby assigned to the city of Appleton, Outagamie county, Wisconsin, for the erection and maintenance of an Old People's Home in the city of Appleton, Outagamie county, Wisconsin, where elderly people may go and live and enjoy the comforts of life at reasonable rates and for a reasonable compensation, all pursuant to the terms and conditions of the last will and testament of Edith C. Fairbanks, deceased, which provided that this trust is given by me on condition that the money used to create said trust fund shall be used for no other purposes except the uses and purposes outlined herein."

In addition there are the following facts stated in their pleadings or stipulated by the parties. On October 23, 1934, the value of the trust assets thus assigned to the city was $5,411.07; and it has had possession thereof and kept them in a separate fund and account which has accumulated and appreciated so that it amounted to $10,466.35 on April 1, 1945. No part thereof has been used, expended, or disposed of by the city for any purpose. Neither did it erect, lease, or maintain an Old People's Home, excepting that prior to and at the time of the creation of the trust and during all of the time thereafter the city has had and maintained at the western limits of the city a three-story brick building, which was built about fifty years ago and has acreage for gardens and was used and maintained by the city as a Home for such elderly poor persons as became inmates thereof. For many years it was surrounded by fifty or sixty acres of farm land owned by

the city, which was cultivated and the products and proceeds thereof used to assist in the maintenance of the Home and it was then commonly known as the "Poor Farm;" but for many years the institution has been known as the "City Home" and is so designated in ordinances and rules of the council relating to it. Of the original farm there remain about one and one-half acres surrounding the Home, and those in residence, who are willing and able to do so, assist in keeping the garden and doing general chores. An addition to this Home was built as part thereof in 1915 for use as a hospital for inmates thereof and is still so used. The Home is under the management of a matron, assisted by her husband, and a cook and general help as needed, and two practical nurses, with one on duty day and night. The approximate cost to the city for operating the Home is $5,000 per year, and the present appraised value thereof with its contents is approximately $35,000. It has a capacity of approximately twenty-five inmates, and presently there were in residence six women and seventeen men, whose ages range from fifty-nine to ninety-five years. Four of them pay $25 per month, and one, who is a hospital patient, pays $65 per month. The others have not sufficient means with which to pay and are kept at the expense of the city, but if at the time of their death, they leave property, the city endeavors to collect from their estate the amount expended for their care. All residents receive food, washing, nursing, medical care, and clothing, if they are unable to provide it for themselves. Residence is determined upon need. Elderly people who have no one to care for them and are without funds are admitted without charge. Those who are paying a nominal sum for their care are elderly people who, although they own property, were unable to care for themselves and were required to live alone, but could not afford the charges usually made by institutions specializing in the care of elderly people. For about fifty years the testatrix lived on the Fairbanks homestead farm, about one and one-half miles

from the "City Home," and during the last fifteen years of her life she lived in Appleton in her home, but not with relatives, and had help for which she paid.

Plaintiffs contended on the trial and on this appeal that the funds devised and bequeathed by the testatrix to the city of Appleton in trust were to be used and could be used by the city only for "the erection and maintenance of an Old People's Home in the city of Appleton, where elderly people may go and live and enjoy the comforts of life at reasonable rates and for reasonable compensation." And plaintiffs contend that the testatrix's conditioning clause, "This trust is given by me on condition that the money used to create said trust fund shall be used for no other purposes except the uses and purposes outlined herein," which immediately follows the aforesaid provision, prevents any diversion of the fund to any other use than the special purpose specified in her will; and that the doctrine of *cy pres* is not applicable.

The defendant city of Appleton contends that by creating the trust, testatrix intended to accomplish a benefit to the community and therefore it is for a public purpose and a charitable trust; but that it is impossible and impracticable to create and maintain with the limited amount of the fund another Old People's Home in Appleton and, therefore, the trust provision must be liberally construed to give effect to the general charitable purposes of the testatrix, and that the use of the trust funds by the city in the improvement and maintenance of its present City Home would accomplish the general charitable purpose of the donor; and that consequently there are applicable to the trust the provisions in sec. 231.11 (7) (d), Stats., that,—

"Where the fulfilment of the special purpose expressed in a trust or other gift for charitable or public purposes is or becomes impracticable, impossible or unlawful, it shall be the duty of the courts by a liberal construction of the trust or gift to ascertain the general purpose of the donor and to carry it

into effect in the nearest practicable manner to the expressed special purpose; provided, however, that the right of visitation of a living donor shall not be held to be impaired by anything contained in this subsection."

These contentions on behalf of the city were sustained by the learned circuit judge who in his decision stated,—

"A charitable trust is one in which the property is devoted to purposes beneficial to the community. Restatement, Trusts, introductory note, chapt. 11, and sec. 348. In *Steenis v. Appleton,* 230 Wis. 530, the court held that the maintenance of an institution intended to accomplish a benefit to the community is a charitable purpose. The Restatement sec. 368 states that included in charitable purposes are 'purposes the accomplishment of which is beneficial to the community' and at sec. 374, that, 'A trust for the promotion of purposes which are of a character sufficiently beneficial to the community as to justify permitting property to be devoted forever to their accomplishment is charitable.' The trust created by the Fairbanks will has every characteristic necessary to bring it within these definitions. Unquestionably a home for the shelter of older people is beneficial to the community. Even though fees might be paid by inmates of the proposed home, it does not lose its character. See comment (c) under Restatement, sec. 376. . . . It is quite obvious that the amount of the fund, $10,000 is insufficient for the erection of a new home. There is another operating home for older people of Appleton. The principle stated in the statute [sec. 231.11 (7) (c) (d)] is the doctrine of *cy pres.* One need not go beyond the discussion of the doctrine in the comment under sec. 399 Restatement [Trusts] to determine whether it is applicable here. The provisions of the instrument creating the trust and the circumstances requisite for the application of the doctrine are there discussed in some detail. Those there declared necessary and which the court finds are present here are:

"(1) Even though the will provides that the property shall be devoted 'for no other purpose' than and 'on condition' that it be applied for the purpose named by testatrix, the doctrine is applicable. Page 1210 [Restatement, Trusts].

"(2) The use of the fund for the erection of a home is impracticable. That has been pointed out. In such case a court

of equity may change the mode of effectuating the bequest within the general purpose of the testatrix. Page 1211 [Restatement, Trusts]. See *School District v. Wood,* 13 N. W. (2d) 153. See also comment (g), Restatement [Trusts], p. 1214.

"(3) Although it may be said that the present home is an accomplishment of the same purpose as testatrix had in mind, the trust does not fail and the court may apply the doctrine. PP. 1214 and 1215. [Restatement, Trusts.] The application of the doctrine requires the court to 'apply the property to a purpose which approximates as nearly as possible the purpose to which the testatrix intended it to be applied.' *First Wis. Trust Co. v. Board of Trustees,* 225 Wis. 34 at 44. It was the primary purpose of Edith Fairbanks to provide a home for elderly people and funds necessary for its maintenance. To erect one is impracticable; the fund is inadequate. The city now has and maintains an institution to accomplish the very purpose which testatrix intended."

Thereupon the court concluded that the fund should be applied to and used for the maintenance of the city's existing Home; and that the judgment shall so provide and also adjudge that plaintiffs' complaint be dismissed.

In view of the undisputed facts herein and the principles of law and authorities applicable thereto, as stated above, the court was warranted in concluding that, because the amount of the trust fund is inadequate for erecting and maintaining an Old People's Home and there has been and is a City Home for elderly people of Appleton, owned and operated by the city, it is impossible and impracticable to erect and maintain another Home in the manner and for the purpose specified in the will, and that therefore, a court of equity may, under the provisions in sec. 231.11 (7) (d), Stats., change the mode of effectuating the bequest within the general purpose of the testatrix. Although the present City Home may be an accomplishment to some extent of the same purpose as she had in mind, the trust does not fail. As it is a charitable trust, it is the duty of the court "to apply the property to a purpose which

approximates as nearly as possible the purpose to which the testatrix intended it to be applied." *First Wisconsin Trust Co. v. Board of Trustees,* 225 Wis. 34, 44, 272 N. W. 464; *Estate of Robinson,* 248 Wis. 203, 21 N. W. (2d) 391; Restatement, 2 Trusts, pp. 1211 and 1214, comment *g*.

The court evidently intended to perform this duty by concluding, as stated in its decision and judgment, that the city "shall apply the trust funds for the maintenance of its existing home." This application of the funds to such general use cannot, however, be held to approximate as nearly as possible the testatrix's intended and specified purpose. The trust funds cannot be used indiscriminately for the general maintenance of the City Home or inmates thereof who are not in the class described in the will as elderly people who go and live there for the purposes and under the conditions stated in the will. Consequently, in order to approximate as nearly as possible and practicable the testatrix's intended purpose, the judgment should provide that the use of the trust funds by the city shall be limited to its erection or maintenance, either separately or in conjunction with its present City Home, of such facilities, services, and conditions as are appropriate and essential to make and maintain some part thereof as a Home where elderly people may go and live for the purposes and under the conditions stated in the will. Apparently these purposes and conditions were being achieved to some extent in so far as there were among the twenty-three elderly persons at the Home, four who were paying $25 per month, and one who as a hospital patient was paying $65 per month; and with the use of the trust fund the facilities, services, and conditions at the Home can probably be improved to carry into effect in the nearest practicable manner the expressed general charitable purpose of the testatrix.

However, as is stated in Restatement, 2 Trusts, p. 1210, sec. 399,—

"The mere fact . . . that it is provided by the terms of the trust that the property shall be devoted 'forever' to a particular

purpose, or that it shall be devoted to that purpose 'and no other purpose,' or that the property is given 'upon condition' that it be applied to that purpose, does not necessarily indicate the absence of a more general charitable intention of the settlor; it may merely emphasize the intention of the settlor that the property should not be applied to other purposes as long as it is possible and practicable and legal to apply it to the specified purpose, and does not necessarily indicate an intention that the trust should terminate if it should become impossible or impracticable or illegal to carry out the particular purpose."

The decision in *Nelson v. Madison Lutheran Hospital & Sanatorium*, 237 Wis. 518, 297 N. W. 424, is not in point. The donations under the subscription contracts involved therein were for a specific purpose which was stated in the contracts, and because of which they were not general charitable gifts. Consequently, neither the *cy pres* doctrine, nor the principles thereof, as stated in secs. 231.11 (7) (c), (d), Stats., were applicable to those donations.

But even if defendant had improperly used the trust funds in connection with its City Home, and thus failed to perform, as trustee, its duty under the will, that would not have resulted in a reverter to the plaintiffs, as heirs of the testatrix, nor entitled them to maintain an action for the enforcement of the trust. There is no express provision for reverter in the testatrix's will, and in the absence thereof no reverter can be implied in the event of the failure of the charitable trust created thereby. *Marcy v. Oshkosh*, 144 Wis. 238, 128 N. W. 899, 128 N. W. 1138; *Steenis v. Appleton, supra;* Restatement, 2 Trusts, p. 1222, sec. 401, comment *a*. Moreover, there are applicable here the following rules,—

"A suit for the enforcement of a charitable trust cannot be maintained by the settlor or his heirs or personal representatives as such." Restatement, 2 Trusts, p. 1185, sec. 391, comment *e*.

"The remedies for the failure of the trustees of a charitable trust to perform their duties under the trust are exclusively

equitable." Restatement, 2 Trusts, p. 1186, sec. 392; *Steenis v. Appleton, supra.*

Consequently plaintiffs cannot maintain this action, and the provision in the judgment dismissing their complaint must be affirmed.

*By the Court.*—Judgment affirmed in part, as stated in the opinion; and modified in part with directions to enter in lieu thereof judgment as stated in the opinion.

WICKHEM, J., dissents.