SALETRI and wife, Respondents, v. CLARK, Appellant.

*March 9—April 4, 1961.*

The cause was submitted for the appellant on the brief of *Lehner, Lehner & Behling* and *Adolph P. Lehner,* all of Oconto Falls, and for the respondents on the brief of *Richard J. Krueger* of Oconto.

BROWN, J. Prior to January 29, 1903, Oconto Land Company, a corporation, owned the southwest quarter of said section 20. On that date the corporation conveyed one acre in the southeast quarter of said southwest quarter to School District No. 4, town of Maple. The corporation's deed to the district recorded March 25, 1903, contained the following condition :

" 'It is hereby agreed and understood that whenever the above-described land is discontinued to be used for school purposes it shall revert back to the Oconto Land Company or its assigns.' "

On April 18, 1904, the corporation conveyed to one Klahorst the southeast quarter of the southwest quarter *except* the acre previously conveyed to the school district. Thereafter, successive grantees in successive conveyances deeded the southeast quarter of the southwest quarter, excepting the above one acre, to subsequent purchasers until on January 2, 1957, one Raymond Sager and wife conveyed to the plaintiffs all of the southwest quarter of section 20 "excepting one acre in the southeast corner used for school purposes."

There is no record of any transaction by Oconto Land Company affecting the southwest quarter of section 20 except its two deeds, one to the acre to the school district and the other the company's conveyance of the remainder of the southeast quarter of the southwest quarter to Klahorst. Also, there is no record that Oconto Land Company ever assigned or otherwise disposed of its ownership of the right of reversion to the company. For lack of other information it is clear that, at the time of Sager's deed to the plaintiffs, title to the one acre was still in the school district with a possibility of reverter of title to Oconto Land Company.

But then, on November 26, 1958, the school district discontinued the use of the acre for school purposes—the court found that to be a fact—and the school district then conveyed the acre to Schaal who, on December 24, 1958, conveyed it to the defendant.

The learned trial court filed a written decision in which it stated that the plaintiffs are "assigns" within the meaning of that term as used in the reverter clause of the 1903 deed.

We can find no basis for such a statement. There is no record of any express assignment of the right of reverter. The only transaction by the land company affecting anything in the southeast quarter other than the corporation's deed to the school district is the deed of the corporation to Klahorst in 1904. That deed expressly excepted the acre from that conveyance. No assignment to Klahorst of the right of reverter can be spelled out of his purchase from Oconto Land Company of land adjoining the acre in question. Of course, as Klahorst had not acquired the right of reverter his successors in title did not acquire it.

In the trial court's view of the situation, a complication then ensued. Although the stipulated facts do not say so, in its written decision the trial court stated as a fact that "Oconto Land Company [is] indisputably out of existence, . . ." The parties have not disputed this allegation and we will take it to be the fact. That fact has made the present trouble.

The date of the assumed dissolution is not given.

Based on the fact that the corporation had been dissolved, the trial court concluded that a retention of the right to reverter in Oconto Land Company led to the absurdity that no one has legal title to the acre in question. Accordingly, the court invoked the doctrine of *cy pres* and asserted that *cy pres* required the court to put title in the plaintiffs.

We consider that the *cy pres* principle is inapplicable to the facts of this case. In Wisconsin the doctrine ". . . applies only where a general charitable purpose can be found in the terms of a bequest or gift, and the specific purpose of the bequest or gift has become impracticable or impossible." *Nelson v. Madison Lutheran Hospital & Sanatorium* (1941), 237 Wis. 518, 525, 297 N. W. 424. When the doctrine is applicable it enables a court of equity to carry out the charitable purpose of the donor in a way consistent

with the donor's intent, although the method he chose cannot be followed. Sooner than to permit a charitable trust to fail, it is the duty of the court to apply the property to a purpose which approximates as nearly as possible the purpose to which the donor intended it to be applied. *First Wisconsin Trust Co. v. Board of Trustees* (1937), 225 Wis. 34, 43, 44, 272 N. W. 464. Very briefly stated, when a charitable purpose cannot be fulfilled according to its terms, equity will attempt to do the next-best similar charitable thing. That is the *cy pres* doctrine. We do not consider that the *cy pres* doctrine is at all applicable to the facts of this case, but when it is applied the court may only divert the property to some other charitable purpose closely akin to the one originally specified by the creator of the trust. Here the trial court could serve no such purpose by declaring title to the acre to be in these plaintiffs.

The premise impelling the court to seize upon either *cy pres* or assignment of the right to reverter was that otherwise the disputed land would have no owner. It is a false premise. This is a case of what the books call a "Possibility of Reverter." "Possibility of Reverter" is any reversionary interest which is subject to a condition precedent. *Addy v. Short* (1952), 47 Del. (8 Terry) 157, 89 Atl. (2d) 136; *Ringgold v. Carvel* (1950), 196 Md. 262, 76 Atl. (2d) 327. A possibility of reverter arises upon a grant so limited that it may last forever or may terminate on a contingency; it is a possibility of having the fee again which exists in grantor after grant of a determinable or qualified fee. *Waller v. Waller* (1951), 220 S. C. 212, 66 S. E. (2d) 876. In *Addy v. Short, supra,* the grantor conveyed land to the United States government for use as a life-saving station, reserving possibility of reverter in the event such use ceased. Thereafter the corporate grantor dissolved and still later the government abandoned the use. The trustees of the defunct

corporation brought an action of ejectment against third parties. The court granted judgment to the plaintiffs and held that even after the three-year statute of limitation, set by the Delaware statute for actions brought by dissolved corporations, had run the corporation was nevertheless sufficiently alive to serve as a repository of title. The discontinuance of the life-saving station and the release by the government of all its rights enlarged the possibility of reverter into fee-simple title which entitled the trustees to maintain an ejectment action.

In *Consolidated School Dist. No. 102 v. Walter* (1954), 243 Minn. 159, 66 N. W. (2d) 881, a grantor conveyed real estate to a school district, reciting in the deed that the land is to be used and held for the site of a schoolhouse and whenever the use ceases the land shall revert to the grantor. The court questioned whether the title conveyed to the district was "a fee simple determinable" with the grantor retaining a possibility of reverter or whether the grantor had provided for forfeiture upon breach, which would have created a fee upon the occurrence of a condition subsequent. The court said that the practical distinction between the two rests largely in their manner of termination—under a condition subsequent the grantor or his heirs must exercise his right of re-entry upon the breach; otherwise the estate continues in the grantee. But there is no such election by the grantor in a fee determinable. In such a case the property reverts to the grantor or his heirs automatically without any action on his part upon the happening of the special limitation. The Minnesota court held that the deed to the school district created a fee simple determinable with a possibility of reverter to the grantor and its heirs. Thus the cessation of use operates at once to accomplish the reversion of title in the grantor.

Our own conclusion follows that of the Delaware and Minnesota courts in the *Addy* and *Consolidated School Dist. Cases, supra.* When the school district in the case before us discontinued the prescribed use, title in fee immediately reverted to Oconto Land Company. If, as we suppose the fact to be, the corporation had been dissolved, it was sufficiently alive to be a repository of title, as in *Addy v. Short, supra.* The title was property, which the record does not show has been alienated. Sec. 180.768, Stats., in brief provides that when a corporation is dissolved and any of its property has been omitted from the final distribution, the title of such property shall vest in the directors as trustees for distribution to the persons beneficially entitled to it, and, under conditions and by procedures specified in that statute, a designated circuit court may appoint one or more trustees with the powers and duties of disposal prescribed by the statute.

The stipulation of facts says nothing about the distribution of Oconto Land Company's assets in the dissolution of the corporation. To say that the defunct corporation could not be owner of this property the trial court must have assumed that the asset—the right of reverter—had been entirely omitted from the distribution. If that is true we conclude that title in fee reverted to Oconto Land Company and immediately thereafter to its trustees as designated by sec. 180.768, Stats. On the facts and assumptions provided by the record, title did not vest in plaintiffs and they have no title to the acre in question.

When a plaintiff has no title, his complaint in an action to quiet title must be dismissed irrespective of the validity of the title of the defendant. *Kidder v. Pueschner* (1933), 211 Wis. 19, 22, 247 N. W. 315. In an action to quiet title plaintiffs must prove that they have title to the tract in question and they cannot prevail on the mere weakness of

defendant's title. *Schimmel v. Dundon* (1957), 1 Wis. (2d) 98, 83 N. W. (2d) 143; *Stone Bank Improvement Co. v. Vollriede* (1960), 11 Wis. (2d) 440, 105 N. W. (2d) 789; *Brody v. Long,* ante, p. 288, 108 N. W. (2d) 662.

Plaintiffs have failed to show any title to this acre in themselves. This requires reversal of the judgment and a dismissal of their complaint.

*By the Court.*—Judgment reversed with directions to dismiss the complaint.