ESTATE OF BRIGGS.    [Two appeals.]

*March 8—April 6, 1926.*

*Wills: Bequest to hospital, church, or school: Charitable purpose: Lapsed legacy: Legatee as beneficiary or administrator of legacy: Trusts: Gift to Y. W. C. A.: Discretion of court: Appointment of trustee.*

1. A general bequest to an individual transfers the property to him absolutely and unconditionally; but a bequest to a hospital or a church or school, even without specification, is impressed with a charitable purpose.    p. 528.

2. Where the promotion of a given cause in a general scheme is the aim of the testator, the institution designated as the beneficiary will be considered a mere agency for administrative purposes, and, if the agency fails, the court will supply a new agency, in the form of a trustee, to carry out the intention of the testator.    p. 529.

3. The fact that at the time of the execution of testator's will the Young Women's Christian Association of Wisconsin, to which testator had bequeathed a legacy, was not in existence, did not cause the legacy to lapse, but merely required the appointment of a trustee to administer the legacy, with the advice of the National Board of the Young Women's Christian Association and of various local organizations affiliated with such board.    p. 530.

4. The bequest having been made to the Young Women's Christian Association of Wisconsin as distinguished from the National Board, and a trust clearly appearing, the court, sitting as a court of equity, must exercise its judgment in determining the agencies which, in its opinion, will best serve the purpose of accomplishing the testator's manifest intention. A trustee within the state is therefore appointed.    p. 533.

5. The distribution of the legacy by the trustee appointed by the court will not be limited to any particular number of organizations, but will be left to the discretion of the trustee, who may be guided by the court having jurisdiction of the administration of the trust.    p. 533.

6. Nor will such distribution of the fund necessarily be confined to existing organizations, but the fund may be used to create new units of the work in this state in co-operation with the National Board.    p. 534.

APPEAL from a judgment of the county court of Walworth county: ROSCOE R. LUCE, Judge. *Reversed, with directions.*

The appeals are from a judgment of the county court denying the petitions of appellants and adjudging as lapsed a certain bequest contained in the last will and testament of one Herman A. Briggs, deceased, of the sum of $5,000 to the Young Women's Christian Association of Wisconsin. These appeals, by stipulation, have been consolidated and have been argued and submitted as one appeal.

For the appellants there was a brief by *Upham, Black, Russell & Richardson,* attorneys, and *Perry J. Stearns,* of counsel, all of Milwaukee, and oral argument by *Mr. Stearns.*

For the respondent there was a brief by *E. L. von Suessmilch* and *C. J. Sumner,* both of Delavan, and oral argument by *Mr. Sumner.*

DOERFLER, J.　Herman A. Briggs, a resident of Delavan, Wisconsin, died testate on the 20th day of February, 1924, and shortly thereafter, upon an application duly made to said county court in that behalf, his last will and testament was admitted to probate. The will, among other things, contained the following provisions, to wit:

"First. . . .

"Second. I give and bequeath to the Young Men's Christian Association of Wisconsin the sum of five thousand dollars.

"Third. I give and bequeath to the Young Women's Christian Association of Wisconsin the sum of five thousand dollars.

"Fourth. I give and bequeath to the Wisconsin Baptist State Convention the sum of five thousand dollars."

The second and fourth provisions of the will were sustained by the court for the reason that organizations with a state-wide activity were in existence at the time the will was made, and thereafter, which could legally take the sums so provided and devote the same for the charitable purposes contained in such provisions. The third provision, being to the "Young Women's Christian Association of Wiscon-

sin," was adjudged lapsed because at the time of the making of the will, and thereafter, there was no organization in existence within the state which could legally take and administer this fund.

The work of the Young Women's Christian Association is conducted in every state in the Union. Its object and purpose wherever it operates is uniform. It is designed to raise and improve the moral, intellectual, and physical standard of the young womanhood of the nation. While its activities are largely centered in industrial and business communities, it extends to every field of activity where young women are employed or attend schools or colleges, and in the course of its growth and development it is constantly engaged in opening new areas in order that the objects of its existence may be attained to the fullest possible extent. At the time of the trial it operated in this state through the agencies of five city, four town, and nineteen student associations, and wherever it manifests itself it conducts its activities without profit. It is so well known and so general in its nature that even the average pupil in the common schools is familiar with it and the objects and purposes of its existence. Courts have taken judicial notice of it. Modern text-books, encyclopedias, and dictionaries recognize it as a prominent social factor in the life of the nation and outline and define its purposes; and uniformly, without exception, the authorities are agreed that it is solely and purely charitable. It performs for the young women identically the same functions that the Young Men's Christian Association performs for the young men.

For a considerable period prior to the year 1911 its activities in this state were under the guidance and control of what was known as the "State Committee of the Young Women's Christian Association of Wisconsin," but in such year it was thought advisable to abandon the so-called state committee and to substitute in its place the "National

Board," and ever since the various local organizations within
the state have been affiliated with the National Board, in
order that the charitable work in this state might assume,
in conjunction with other organizations, a nation-wide field.
Any young woman is eligible to all the privileges of the
Young Women's Christian Association, whether she is a
member thereof or not.   The expenses of the National
Board are defrayed from membership dues and moneys
raised in local campaigns conducted by the local organiza-
tions, with the advice and assistance of representatives of
the National Board.

The deceased at the time of his death left an estate valued
at about $300,000.   During his lifetime he had been af-
filiated with the Baptist Church and had been a contributor
thereto, and he also contributed to the Young Men's Chris-
tian Association.   It does not appear from the record that
he had ever made any contributions to the Young Women's
Christian Association, and no legal organization of that kind
existed in Delavan.   Both the Baptist State Convention and
the Young Men's Christian Association were recognized as
state organizations, although they were affiliated with na-
tional organizations that were maintained upon a similar
basis as the National Board of the Young Women's Chris-
tian Association.   It is therefore possible that when the testa-
tor made the provision in his will for the benefit of the Young
Women's Christian Association of Wisconsin, he labored
under the impression that it had a state organization like
that of or similar to the Young Men's Christian Association
and the Baptist State Convention.   While the Young Wom-
en's Christian Association as a state organization had, dur-
ing the year previous to the execution of the will, gone out
of existence, it must be assumed that, being a man of con-
siderable intelligence and standing in the community, and
a man of large business interests, and one who was chari-
tably inclined, his object and purpose in making the bequest

herein involved was to further the interests of the work of the Young Women's Christian Association in this state. The sole question, therefore, involved on this appeal may be stated as follows: Did this bequest lapse because at the time of the making of the will there was no state-wide organization in Wisconsin to take and administer this bequest?

As has heretofore been said, the Young Women's Christian Association is a public charity. It is inherently an altruistic and non-profit producing organization. It has an annual national budget, out' of which are met the expenses for the current year. When this budget is exhausted it is replenished by dues, moneys derived from the proceeds of public campaigns, and by donations from charitably inclined individuals. At the various camps and buildings owned and conducted by the organization, meals and lodgings are furnished at a moderate and reasonable sum. Many of the workers in the cause are reasonably compensated for their services, and this is necessary as one of the proper items of expense for administration purposes; but in addition to the paid workers, it is well known that the contributors both of material means and of efforts and labor are legion. It is difficult to conceive of a higher or nobler charity, or one which has a tendency to leave a more permanent and favorable impression, not only upon the beneficiaries of the present day but of those who may come hereafter, for the organization ministers to the needs of the young girls and women in the country, many of whom in after years will preside over homes and families. The conduct of this organization tends to the uplift of the standard of young womanhood and the furtherance of its spiritual, intellectual, and physical welfare.

With these thoughts firmly in mind, let us consider the effect of a bequest like the one herein involved. A general bequest to an individual transfers to him the property absolutely and unconditionally. The beneficiary can use it

Estate of Briggs, 189 Wis. 524.

for any purpose he may see fit. With it he can gratify his own selfish desires, or he can bestow it upon charity, and if he concludes upon the latter, the objects and extent of his charity may be of his own selection. This is so because the bequest was absolute and unrestricted and because such disposition and use are in accordance with the clearly manifested intention of the testator. Let us assume, however, that A, the beneficiary, is a charitable organization with well defined and recognized objects and purposes, such as a hospital, a church, or a school, and the distinction between the two forms of bequest immediately becomes apparent. The bequest to the hospital, even without a specification for charitable purposes, is impressed with a charitable purpose that it be used to promote the well-known and recognized purposes of a hospital, and this would likewise be true of a bequest to a church or a school. This distinction determines the purpose of the bequest and limits its use, and no other or different use would amount to a compliance with the testator's intention. There is thus read into the bequest the well-known and recognized purpose for which the hospital, the church, or the school has been organized and maintained.

While it may be conceded that a bequest to a particularly denominated hospital might ordinarily be deemed lapsed where such hospital is in fact non-existent (which would also be true as to a given church or school under the same circumstances), nevertheless, if from all the surrounding facts and circumstances it can reasonably be gathered that the object of the testator was centered not in the aims of one hospital or one church or one school, but upon a general scheme to promote a given *cause*, then such named hospital, church, or school may be deemed a mere agency for administrative purposes, and if the agency fails, a chancellor will not permit the purpose to fail, but will supply a new agency in the form of a trustee, to carry out the testator's intention.

Individual trustees may die before the testator; corporate trustees may be dissolved and pass out of existence; both individual and corporate trustees may have proven themselves dishonest and unworthy, so that a chancellor may deem it his duty to ignore the testator's choice, and yet the trust will not be permitted to fail, for after all, when it shall be once definitely determined by the court that a trust is created to promote a given cause, the lacking element can and will be readily supplied. These considerations are pertinent to the solution of the question now before us, and illumine the path that leads to a correct construction of the testator's will in so far as it involves the particular bequest for the benefit of the Young Women's Christian Association of Wisconsin.

Having devoted $5,000 to the cause of the Young Men's Christian Association of Wisconsin, it must be conceded that the testator intended this sum for a specific cause, the promotion of which was state wide. This bequest was sustained by the learned trial court for the reason that there existed, at the time of the making of the will, a state organization which could both take and administer. This is also true, for the same reason, with respect to the $5,000 bequeathed to the Baptist State Convention. In both instances, however, the object of the testator which he desired to promote was a specified cause, state wide, in which he denominated, as an administrator of a charitable trust, a given, existing state organization. The bequest to the Young Women's Christian Association is likewise state wide. It is for a specified purpose. The testator intended that it be administered for that purpose. The purpose is the controlling feature; the appointment of a trustee is a mere incident to accomplish that purpose; and even though the trustee be in fact non-existent, a court of equity will not for that reason permit the bequest to lapse. It is the spirit that governs, and this spirit is manifested by the testator's intention.

*Harrington v. Pier,* 105 Wis. 485, 82 N. W. 345, is one of the leading cases in the country involving the construction of a charitable trust, and in it the late Mr. Justice MARSHALL, who delivered the opinion of the court, uses the following significant language:

"It follows that indefiniteness of beneficiaries who can invoke judicial authority to enforce the trust, want of a trustee if there be a trust in fact, or indefiniteness in details of the particular purpose declared, the general limits being reasonably ascertainable, or indefiniteness of mode of carrying out the particular purpose, does not militate against the validity of a trust for charitable uses. Given a trust, with or without a trustee, a particular purpose—as education, or relief of the poor, as distinguished from a bequest to charity generally—and a class great or small, and without regard to location, . . . and we have a good trust for charitable uses. The court, through its strictly judicial power, may fill the office of trustee if necessary, the trustee can select the immediate beneficiaries or objects within the designated class and scheme; he can determine upon the details necessary to effect the intention of the donor within the general limits of his declared purpose, and execute the trust accordingly; and the proper public agencies, if necessary, can invoke judicial power to enforce such execution. At no step is the court required to exercise *cy pres* power in the sense of prerogative authority, or at all, except as the term is found used in regard to those liberal rules of judicial construction applied by courts of equity to charitable trusts, well exemplified in *Webster v. Morris,* 66 Wis. 366, 28 N. W. 353, for determining the intent of a donor in creating a trust for a designated proper charitable purpose."

It will be noted how aptly and forcibly this quotation applies to the instant case, and were it not a part of the opinion in the case from which it is quoted, the language might be used in this case and would fit the situation in its minutest detail.

Charity is unselfish; it breathes the spirit of the brotherhood of man; it points to the source of real happiness and contentment; it reflects the fundamental teachings of

Jesus; it is the foundation stone of the Christian religion; and it is the opinion of the writer that nowhere can it serve a higher or nobler purpose than by the ministrations of the Young Women's Christian Association, which has for its object and aim the uplift and material and spiritual welfare of the young womanhood of the country. In the field in which it operates it is all-inclusive; and in the spirit and the breadth of that spirit in which charity is given will a court of equity, in the exercise of its broad and all-inclusive powers, meet it and sustain it. If this were not so, a court of equity, which more nearly resembles the justice of that great unknown Power, would lose its principal attribute.

The deceased was a member of a church that was not only devoted to the pronouncement and spread of Christian doctrines or theories; in fact, it may be seriously doubted whether mere profession of religious theories, without actual practice, is elevating to the human race. It is by their acts that we shall judge, not by their professions; and the Baptist Church, in conjunction with other religious denominations, has seized upon such organizations as the Young Men's Christian Association and the Young Women's Christian Association as mediums by and through which they demonstrate the sincerity of their faith. Thus principles and practice are made to co-operate in order that the highest results may be achieved.

The deceased was a man evidently of large interests. This connotes intellectuality. He was a man of advanced years, and possessed a knowledge and experience that accompanies maturity. He was aware of the beneficent work of the Young Men's Christian Association, and during his lifetime was a contributor to that cause. He was an intimate friend and associate of others who played a leading part in the promotion of the work of both associations. How can it, under such circumstances, be reasonably inferred that he did not know of the non-existence of a state-

wide organization denominated as the Young Women's Christian Association? Is it not altogether just as logical to assume that he knew of the dissolution of the state committee and of the affiliation of the local organizations with the National Board, and that when he made the bequest in his will to the Young Women's Christian Association of Wisconsin he manifested and intended a promotion of the cause rather than a specified existing body? But whether he did or did not have in mind a specified body for administration purposes, he clearly had in mind the promotion of the *cause,* and he limited this cause to the state of which he was a citizen.

While numerous local organizations have joined in a general request to have this fund paid over to the National Board for the benefit of the objects of the Young Women's Christian Association in Wisconsin, this court cannot be controlled thereby. The purpose of the trust clearly appearing, and it being limited by the express provisions of the will to the furtherance of the work in the state of Wisconsin, the court, sitting as a court of equity, is bound to exercise its judgment and discretion in determining for itself the person or persons or the corporation or association which in its opinion will best serve the purpose of accomplishing that which the testator made manifest. The National Board is a foreign corporation. Its main office is in the city of New York, which is also the place of residence of most of its executive officers. Therefore, it is deemed advisable to appoint a trustee within the state who is more readily amenable to the jurisdiction of the court.

The various local organizations in the state, as an alternative, have also requested that the fund be distributed among the various working organizations, in proportion to their membership. We cannot accede to this request. The amount bequeathed is for charity. Charity can be best administered where it is most needed, and we are not disposed

to limit the distribution to any particular number of the organizations, but will leave it entirely to the trustee, who, upon making a proper survey, may ascertain the place or places where the charity will do the greatest good; and in determining this question the trustee may be guided by the court having jurisdiction of the administration of the trust. Nor is the application of the fund necessarily confined to existing incorporated or unincorporated organizations. The trustee may, in a proper case, co-operate with the National Board in creating new units of the work in this state and in covering fields where the organization has not yet functioned.

In writing this opinion we have not overlooked the case of *Tharp v. Seventh Day Adventist Church*, 182 Wis. 107, 195 N. W. 331. While that case has many features similar to those involved in the instant case, it differs materially in that the various church organizations were not identical in their creed, and therefore no distribution could be made without creating discord and dissatisfaction. In the instant case no differences in principles of the work of the organization throughout the state and the country exist. The objects and purposes are uniform, and the court can administer this trust through the instrumentality of the trustee, with the advice of the National Board and of the various local organizations, quite as effectively as though a statewide organization had been in existence at the time of the making of the will and at the time of the testator's death.

In no event, however, can it be said that a distribution of the amount of this bequest among the residuary beneficiaries under the will of the testator is a carrying out of the testator's wishes and intentions, so that his intentions, which are ascertainable and clear, must prevail.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to enter judgment in accordance with this opinion.