Estate of Rowell: Salvation Army, Appellant, vs. Appleton State Bank, Executor, Respondent.*

*March 13—April 12, 1946.*

* Motion for rehearing denied, with $25 costs, on June 4, 1946.

For the appellant there was a brief by *Benton, Bosser, Becker & Parnell,* attorneys, and *David L. Fulton* of counsel,

all of Appleton, and oral argument by *Mr. Edgar E. Becker* and *Mr. Fulton.*

For the respondent there was a brief by *Fred V. Heinemann,* attorney, and *L. Hugo Keller* of counsel, both of Appleton, and oral argument by *Mr. Keller.*

WICKHEM, J.  This appeal involves the construction and effect of paragraph 3 of testator's will which provides as follows:

"Third.  I give and bequeath to the Salvation Army of Appleton, Wisconsin, the sum of ten thousand dollars ($10,000).  It is my wish that this money be expended by the Salvation Army for the benefit of the needy people in the city of Appleton, Wisconsin."

The Salvation Army is a Wisconsin corporation having for its purposes the undertaking of "charitable, educational, missionary philanthropic, beneficial and religious work of the character that has been and is being conducted by the branch of the Christian church known as the Salvation Army. . . ." "Such corporation may receive and hold both real and personal property of and for said the Salvation Army, may execute trusts thereof. . . ."  The corporation has a local corps in Appleton which is one of twenty-five such units under the general command of a divisional commander and under the immediate command of a local officer.  These commanders are hired and paid by the corporation.  The advisory board of Appleton is composed of citizens who assist in receiving funds and give counsel and advice to the local corps.  This board is unincorporated, contains from eleven to twenty-one members, and has a president, secretary and treasurer.  The activities of the advisory board are under the jurisdiction and control of the state organization.  The local corps derives funds from two principal sources.  The first is internal, and represents collections at meetings, contributions of members, band income, and the like.  The second source in Appleton

is an annual drive. The funds raised by this drive are paid to the advisory board, disbursed upon the signature of its treasurer and countersignature of the divisional commander in Milwaukee. These funds are kept separate from the other fund which is disbursed upon the signature of the corps commanding officer and the countersignature of the divisional commander.

The contentions of appellant are, (1) that the designation of the subordinate department of the Salvation Army by the testatrix results in law in a designation of the corporation itself for the reason that the subordinate departments have no capacity to be trustees or to receive charitable gifts. *Will of Southard,* 208 Wis. 148, 242 N. W. 583, is relied on as holding that where no other organization is in existence to which the designation used by testatrix is applicable a court is warranted in concluding that the only organization qualified to hold and administer funds for the Salvation Army was intended to be designated. It is also contended that this is an outright gift and not a charitable trust for the reason that the words of the bequest are precatory, and that in any event, the Salvation Army is a charitable organization and serves the needy of Appleton, and the bequest should be construed as a gift to the corporation for the purposes it was organized to execute. Reliance is had upon Restatement, 2 Trusts, p. 1093, sec. 347, to the effect that where property is given to a charitable corporation a charitable trust is not created, even though the bequest specifically directs the corporation to devote the income only to the accomplishment of a particular one of the corporate purposes. It is also claimed that, assuming this paragraph to create a charitable trust, an unincorporated association has no competency to act pointing (1) to an intention to designate appellant, which is a corporation with trust powers, or (2) to an abuse of discretion by the trial court in appointing an unqualified advisory committee as trustee.

Respondent relies upon 5 R. C. L. p. 313, sec. 29, to the effect that the disqualification of an unincorporated association

to act as trustee is largely applicable to trusts in land and is grounded upon the fact that an unincorporated society cannot take title to the land, and asserts that there is considerable authority and a definite trend toward a holding that the objection is not valid. It is further contended by respondent that there is a charitable trust under the rule of *Maxcy v. Oshkosh,* 144 Wis. 238, 128 N. W. 899, 128 N. W. 1138, and other cases hereinafter to be discussed.

In approaching the question presented by this appeal, the proper starting point is the ascertainment of testatrix's intention. *Will of Kavanaugh,* 143 Wis. 90, 126 N. W. 672. In the light of the circumstances heretofore detailed, and the language of the bequest, we are of the opinion that testatrix meant to give a charitable bequest not to the corporation known as the Salvation Army of Wisconsin, but to such local representatives of the Salvation Army as collected and distributed funds on behalf of the Appleton unit. We are not impressed with the contention that there was any purpose to give the bequest to the corporation, the activities of which were state-wide in scope, for distribution in accordance with the powers set forth in its articles of organization. Furthermore, we are definitely of the view that the advisory committee was the intended legatee. Testatrix did her banking business and got her business advice from Mr. M. A. Schuh, who was an officer of respondent bank and treasurer of the advisory committee. The activities of the advisory committee in collecting and handling funds for local use by the Salvation Army were notorious in Appleton and under all these circumstances must have been known to testatrix, whose intention was substantially the same as that of persons who contributed to the local drive. The local fund was to be spent in the city of Appleton for charitable purposes. That is what testatrix wished to accomplish and the trial court came to a proper ascertainment of her intention. The foregoing distinguishes this case from *Will of Southard, supra.* Whether the clause so

construed creates a charitable trust or whether it has designated an incompetent trustee are matters which we shall now consider.

We are of the view that paragraph 3 creates a charitable trust. In Restatement, 2 Trusts, p. 1095, sec. 348, a charitable trust is thus defined:

"A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose."

In *Maxcy v. Oshkosh, supra,* at page 249, the court said:

"In order to create such a trust there must be some public benefit open to a vague and indefinite number of persons until they are selected or appointed to be the particular beneficiaries of the trust for the time being."

See also in this connection, *Rust v. Evenson,* 161 Wis. 627, 155 N. W. 145; *Will of Kavanaugh, supra.* We think the clause satisfies the foregoing definitions unless the words "it is my wish" are to be construed as merely advisory and not mandatory. It is our view that the purpose and intent of the paragraph is manifest that this money shall be spent to relieve the poor of the city of Appleton. In *Will of Platt,* 205 Wis. 290, 237 N. W. 109, the words "it is my desire" were held mandatory; such also is the holding in *Will of Olson,* 165 Wis. 409, 162 N. W. 429. In the same case the words "it is my wish" were held mandatory. We have here a plain purpose that the bequest be disbursed for the benefit of the poor of Appleton, and the instructions for its application must be held to be mandatory.

We now come to the principal difficulty in this case. The advisory board is unincorporated. The board consists usually of from eleven to twenty-one members. It has a president, secretary and treasurer, and certain committees that function

in the disbursement of the Salvation Army money and other matters pertaining to the general welfare of the local corps. The divisional commander of the Salvation Army is a member *ex officio* but the board is largely made up of local people. It receives money from the annual drive, deposits it in what is called a "Home Service Fund," and disburses it upon the signature of its treasurer, with the countersignature of the divisional commander. The members of the board were originally selected by an organizer for the Salvation Army who was the local commanding officer. The original members were appointed, one third for one year, one third for two years, and one third for three years. Each served for three years and successors were selected by the board to serve like periods. The question whether a committee so organized and constituted is competent to take the bequest and to administer the trust offers some difficulties. Where it has been the intention of testatrix to vest title to a bequest in trust not in individual members of an unincorporated group, but in the group as a whole, the fact that the group has no legal entity or capacity to take title to the property is fatal to its competency as a trustee. See 1 Scott, Trusts, p. 516, sec. 97, and cases there cited. This is not fatal to the trust but a court of equity may appoint a competent trustee. *First Wisconsin Trust Co. v. Board of Trustees,* 225 Wis. 34, 272 N. W. 464; *Estate of Thronson,* 243 Wis. 73, 74, 9 N. W. (2d) 641; and *Dodge v. Williams,* 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103.

While some authorities show a tendency to make a distinction between the capacity of a voluntary association to take a devise of real property and a bequest of personal property (as to which see cases cited in 5 R. C. L. p. 13 sec. 29), the more liberal rule applicable to bequests of personal property requires that the unincorporated group qualify as a voluntary or unincorporated association. Sec. 72.01, Stats., implies some recognition of the fact that there can be charitable bequests to voluntary associations since such a bequest is specially exempted

from the inheritance tax. We do not assume to decide to what extent this constitutes statutory recognition of the fact that charitable bequests may go to voluntary associations. After all, a tax law assumes rather than creates capacity. It is clear from the holding in *Estate of Thronson, supra,* that the advisory committee being merely a subordinate department of the Salvation Army is not even a voluntary association within the meaning of sec. 72.01; and this being true, is incompetent to receive a bequest. It is true that the *Thronson Case* involved the question of exemption from taxation, but it was necessary to the decision to determine the legal capacity to take property of an unincorporated committee of the Grand Lodge of Masons which was in charge of the Masonic home at Dousman. It was held that the committee was incapable of taking property as donee. While the property which was the subject of the testamentary gift largely consisted of land, it did consist in part of personalty. It was held that the committee had no corporate entity and "cannot therefore take title to property, at any rate to the real estate of which the residue largely consists." The court, after laying down the familiar doctrine that a court of equity will not permit the trust to fail for want of a trustee, authorized the appointment of a competent trustee. While the case is not on all fours with this, we think it at least requires the holding that the advisory committee, being a subordinate department of the Salvation Army, is not even a voluntary association and is incapable of receiving the bequest or acting as trustee. It has no capacity as a group and testatrix never intended the members to take as individual trustees. For this reason, we consider that, although the advisory committee was the intended trustee, the trial court was in error in holding it competent so to act. Not only are there difficulties in respect of the title, but also in respect of the supervision of such a group by a court of equity. Judgment must be reversed and the cause remanded so that the trial court may in its discretion appoint a trustee which is qualified to act.

This discretion may be discharged either by appointing respondent bank or the Salvation Army of Wisconsin as trustee (see last paragraph of opinion in *Estate of Thronson, supra*). In case the bank is appointed, it may, as stated in *Estate of Briggs,* 189 Wis. 524, 534, 208 N. W. 247, "be guided by the court having jurisdiction of the administration of the trust" or may "in a proper case, co-operate with the" advisory board in distributing the charity. In the event that appellant, the Salvation Army, is appointed it must administer the trust through the local facilities in accordance with testatrix's intention as we have found. it. Either appointment will insure that the purposes of testatrix's will be fully executed by a competent trustee.

*By the Court.*—Judgment reversed, and cause remanded with directions to proceed in accordance with this opinion.

RECTOR, J., took no part.