Estate of Bletsch: Bletsch, Appellant, v. Barth, Executor, and another, Respondents.

*September 2—September 29, 1964.*

For the appellant there were briefs and oral argument by *Michael J. Dunn* of Milwaukee, and *Philip G. Brennan* of Chicago, Illinois.

For the respondent Barth there was a brief by *Randall, Zimmers, Randolph & Randall* of Milwaukee, and oral argument by *Wilke M. Zimmers*.

For the respondent Shriners' Hospital for Crippled Children there was a brief by *Mount & Keck* of Milwaukee, and oral argument by *Herbert L. Mount*.

GORDON, J. The trial court analyzed the evidence and determined that the testator's purpose was "to help crippled children through Masonic charitable organizations of the state of Illinois." The following conclusion of law was entered:

"That the only organization whose operations closely reflect the intent of the deceased is in the 'Shriners Hospital for Crippled Children' located in Chicago, Illinois."

The designated beneficiary in the instant case is non-existent; this gave rise to a latent ambiguity which made it appropriate to examine the extrinsic evidence. In *Estate of Gibbs* (1961), 14 Wis. (2d) 490, 496, 111 N. W. (2d) 413, this court explained that there are two classes of latent ambiguity:

"One, where there are two or more persons or things exactly measuring up to the description in the will; the other where no person or thing exactly answers the declarations and descriptions of the will, but two or more persons or things answer the description imperfectly. Extrinsic evidence must be resorted to under these circumstances to identify which of the parties, unspecified with particularity in the will, was intended by the testator."

The trial court had before it the testimony of Mr. Koerner, who described the origins of the language which was later used by the testator in his will. The extrinsic evidence also included a description of the physical disability of the testator's daughter.

The appellant urges that the instant case is controlled by *Tharp v. Seventh Day Adventist Church* (1923), 182 Wis. 107, 195 N. W. 331. There the gift was to the "Seventh Day Adventist Church" for use in publishing and distributing literature of the church. Evidence was received in that case which demonstrated that the Seventh Day Adventists constituted a religious denomination with numerous "conferences." Although there were two incorporated "conferences" in Wisconsin holding title to church property, the testator was not a member of either. The court held that it was impossible to determine which group the testator had in mind, and therefore the bequest failed. Similarly, in the instant case, appellant argues that it is impossible to determine which group Jack Bletsch intended to benefit.

The findings of the trial court in the case at bar are different from those in the *Tharp Case*. Here the trial court

found that there was a distinct charitable purpose on the part of the testator and, using the will and the extrinsic evidence adduced, it found that the Shriners' Hospital for Crippled Children was the only one which closely reflected the testator's plan. In our opinion, this finding is not against the great weight or clear preponderance of the evidence.

The trial court applied the *cy pres* doctrine. That doctrine, as defined in *Saletri v. Clark* (1961), 13 Wis. (2d) 325, 329, 108 N. W. (2d) 548, is this:

"Very briefly stated, when a charitable purpose cannot be fulfilled according to its terms, equity will attempt to do the next-best similar charitable thing. That is the *cy pres* doctrine."

The appellant urges that the *cy pres* doctrine is not applicable in Wisconsin. We recognize that this contention is supported in a number of earlier Wisconsin decisions. For example, in the *Tharp Case,* Mr. Chief Justice VINJE stated flatly, at page 112: "In our state the doctrine of *cy pres* does not obtain." One of the cases relied upon in the *Tharp Case* is *Harrington v. Pier* (1900), 105 Wis. 485, 82 N. W. 345. The *Harrington Case,* however, falls considerably short of sustaining the broad, sweeping statement as to *cy pres* contained in the *Tharp Case.* In the *Harrington Case,* the court said, at page 503:

"When it is said that the doctrine of *cy pres* does not prevail in this state, that does not refer to those liberal rules of judicial construction of charitable trusts, by courts of equity, which prior to the statute of Elizabeth were applied in chancery, and of which such statute is only confirmatory, but to the prerogative power exercisable where such statute prevails. Courts here, as anciently, look with favor upon all donations to charitable uses, and give effect to them where it is possible to do so consistent with rules of law, . . ."

In England, at common law, there were two doctrines of *cy pres*. One was judicial *cy pres;* the other was known as prerogative *cy pres*. Under the latter doctrine, the king, in the exercise of his prerogative power, could, in certain cases, ignore a testator's intention and dispose of a man's property as the king wished. There was no duty on the part of the king (other than moral) to honor the testator's wishes. It is this prerogative doctrine of *cy pres* which has been disavowed in the United States.

The distinction between prerogative *cy pres* and judicial *cy pres* is significant because in the former the purposes to which the king might apply the property could be diametrically contrary to the intentions of the decedent; however, in judicial *cy pres* the court's principal burden was to effectuate as closely as possible the testator's plan. We doubt that the courts of Wisconsin ever truly intended to disavow judicial *cy pres*.

That the rejection of the *cy pres* doctrine was limited to the prerogative type of case is demonstrated by Mr. Chief Justice ROSENBERRY's observations in *First Wisconsin Trust Co. v. Board of Trustees* (1937), 225 Wis. 34, 43, 272 N. W. 464:

". . . in some of the earlier cases the *cy pres* doctrine was repudiated. It is quite clear that what was repudiated was the prerogative power exercised by the chancellor, not as a judge, but as a representative of the Crown."

Although it was not so denominated, judicial *cy pres* was, in effect, applied by the court in *Estate of Briggs* (1926), 189 Wis. 524, 208 N. W. 247. There, at page 534, the court wrestled with the *Tharp Case* and sought to distinguish it. That the *cy pres* concept was tacitly followed in the *Briggs Case* is implicit from the following portion, at page 529:

"While it may be conceded that a bequest to a particularly denominated hospital might ordinarily be deemed lapsed where such hospital is in fact non-existent (which would also be true as to a given church or school under the same circumstances), nevertheless, if from all the surrounding facts and circumstances it can reasonably be gathered that the object of the testator was centered not in the aims of one hospital or one church or one school, but upon a general scheme to promote a given *cause,* then such named hospital, church, or school may be deemed a mere agency for administrative purposes, and if the agency fails, a chancellor will not permit the purpose to fail, but will supply a new agency in the form of a trustee, to carry out the testator's intention."

The hesitation reflected in the Wisconsin decisions to use *cy pres* openly while at the same time actually applying its doctrine was commented on in a note in 1947 Wisconsin Law Review, 467. In the note, the author, Thomas G. Godfrey, observed, at page 468:

"Although the trial court went to some length in establishing definitely that this was a charitable trust, the Supreme Court focused its attention upon the interpretation of the content and purpose of the trust. In so doing the court again demonstrated that, although it will not recognize or use the *cy pres* doctrine as it is used by the majority of other jurisdictions in the United States, when it utilizes the doctrine of liberal construction provided by statute, it is using basically the same theory."

The doctrine of *cy pres* is preserved in the American Law Institute's Restatement of Trusts. Restatement, 2 Trusts, p. 1208, sec. 399. See also 5 Page, Wills (Bowe-Parker rev.), p. 239, sec. 41.33.

While most of the descriptions of *cy pres* confine its operation to charitable "trusts," there is no sound reason for the requirement that there be a formal trust, as such. In our

opinion, it is sufficient if there is a bequest to a charity. In a sense, it can perhaps be said that a charity always receives the gift in trust for its purposes. In *Estate of Briggs* (1926), 189 Wis. 524, 208 N. W. 247, there was a gift to the "Young Women's Christian Association of Wisconsin." Although no express trust was created, the court treated the matter as a charitable trust. Instead of saying that gifts to charities are necessarily in trust, we deem it better to rule that the doctrine of judicial *cy pres* is available when there is a gift to a charity—without requiring that there be a formal trust.

The Wisconsin legislature, in 1933, enacted sec. 231.11 (7) (d), Stats. This subsection reflects a legislative intention both to preserve the *cy pres* doctrine and also to apply it even though the gift to the charity is not expressly in trust. This subsection provides as follows:

"Where the fulfillment of the special purpose expressed in a trust or other gift for charitable or public purposes is or becomes impracticable, impossible or unlawful, it shall be the duty of the courts by a liberal construction of the trust or gift to ascertain the general purpose of the donor and to carry it into effect in the nearest practicable manner to the expressed special purpose; provided, however, that the right of visitation of a living donor shall not be held to be impaired by anything contained in this subsection."

We do not believe that a bequest to a charity must fail when those purposes are clearly evidenced and there is in existence an identifiable beneficiary whose charitable or public program and goals are reasonably close to those expressed by or attributable to the testator. *Cy pres* remains a sound and useful doctrine. We expressly withdraw the statement quoted above from the *Tharp Case;* we also consider as no longer controlling those cases which reject judicial *cy pres* as applied to charitable bequests.

*By the Court.*—Judgment affirmed.