ESTATE OF BERRY: BOARD OF TRUSTEES OF BELOIT COLLEGE and others, Appellants, v. FARROW, Special Trustee, and others, Respondents.

*December 1, 1965—January 7, 1966.*

---

508

510

511

512

For the appellants there were briefs by *Caskey & Collins* of Beloit, attorneys, and *E. L. Wingert* of Madison of counsel for all appellants, and *William A. McClain* of Cincinnati, city solicitor, and *Taft, Stettinius & Hollister* and *John A. More,* all of Cincinnati, of counsel for the University of Cincinnati, and oral argument by *Mr. Wingert.*.

For the respondents Frank Farrow and the Beloit State Bank there was a brief by *Blakely, Long, Grutzner & Jaeckle* and *George K. Blakely,* all of Beloit, and oral argument by *George K. Blakely.*

For the respondent state of Wisconsin the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J.   The county court considered the will ambiguous and therefore took testimony of Mr. Farrow in an attempt to determine the dominant purpose of Earl

E. Berry. It then proceeded to apply the doctrine of *cy pres* to carry out what it considered to be the testator's intent.

It is, however, error to construe a will to find an unexpressed intent of the testator when the terms of the will are unambiguous on their face and clearly express the testator's purpose. This court has stated the rule in *Will of Moran* (1903), 118 Wis. 177, 196, 96 N. W. 367:

> "Many . . . rules might be referred to, to which we could resort in solving ambiguities. But at the outset we must have ambiguity before we can enter upon the field of interpretation or construction. Too often that fundamental principle is not given its proper significance, and ambiguities are created by construction when there are none in fact. . . ." [1]

A careful perusal of the will by this court reveals no ambiguity in the clauses that need to be put into operation. While there might have been some ambiguity in the method to be employed by the Beloit Foundation in administering the loan fund, it is clear from the record that the Foundation declined to accept that portion of the bequest. Whatever uncertainties may have arisen under another set of facts and circumstances is of concern neither to this court nor the court below. The record shows that at the initial hearing on this matter, the Foundation had not yet declined to administer the loan fund, but it did so shortly thereafter. Bearing this fact in mind, we are confronted with no ambiguity.

The Foundation clearly renounced what the testator denominated as the "Earl E. Berry Student Loan Fund." In that contingency, which is now a reality, the will clearly, plainly, and unambiguously gives that portion of the trust estate to the colleges. The will provided that if the Foundation should decline the gift that:

---

[1] Cases holding similarly included *Will of Tousey* (1951), 260 Wis. 150, 50 N. W. (2d) 454; *Will of Walker* (1962), 17 Wis. (2d) 181, 185, 116 N. W. (2d) 106; *Estate of Zink* (1962), 15 Wis. (2d) 527, 530, 113 N. W. (2d) 420.

". . . said Earl E. Berry Student Loan Fund . . . shall be turned over one-half (½) to Beloit College . . . and the other one-half (½) to the University of Cincinnati . . . to be used by each of said institutions as a loan fund for the assistance of their respective students. . . ."

It would have been difficult to have expressed the testator's obvious intent more clearly than did the able scrivener of the above paragraph. It is plain on the face of the will that the bequest was to go *in toto* to the Beloit Foundation. Two thirds was to be administered by it as a loan fund, and one third for such charitable purposes as it might select. The testator, however, wisely foresaw the possibility of the Beloit Foundation not being able to or not wishing to accept all or part of the bequest.

It is also clear that the testator elected to vary the emphasis of his bounty depending upon who was administering the loan fund. In referring to the situation where the Foundation was administering the fund, he stated that sums were to be loaned "to worthy persons, preferably residents of Beloit, Wisconsin, or Rock County, Wisconsin, to assist them in obtaining an education, especially at Beloit College and the Engineering School of the University of Cincinnati."

Under the second contingency, the one that in fact occurred, the funds are to be given to the educational institutions "for the assistance of *their* respective students, preferably students from Beloit, Wisconsin, and Rock County, Wisconsin." (Emphasis supplied.)

It is undeniable that the intent the testator expressed if the Foundation declined the fund, was to give the fund in equal shares to the colleges as loans to *their* students, giving preference, however, to students from the city and county of the testator's residence.

This change of emphasis resulting from the happening of a foreseen contingency does not create an ambiguity or even an inconsistency in the will. The alternate provisions are to apply only in the event of distinct occurrences.

Nor is there occasion here to apply the doctrine of *cy pres*. That rule of construction is open to the court only in the event circumstances have made it impossible to carry out the testator's charitable intent. This court has defined the principle thus:

"Very briefly stated, when a charitable purpose cannot be fulfilled according to its terms, equity will attempt to do the next-best similar charitable thing. This is the *cy pres* doctrine." *Saletri v. Clark* (1961), 13 Wis. (2d) 325, 329, 108 N. W. (2d) 548.

This court in *Estate of Bletsch* (1964), 25 Wis. (2d) 40, 45, 130 N. W. (2d) 275, expressly approved the application of the *cy pres* doctrine upon appropriate occasions, but as set forth in the Restatement, 2 Trusts, p. 1208, sec. 399, *cy pres* is applicable only where the particular charitable purpose "becomes impossible or impracticable or illegal to carry out the particular purpose . . . ." The testator's wishes are then carried out as nearly as may be possible (*cy pres comme possible*).

In the event that it is possible for the particular purpose to be carried out, the doctrine is not applicable.

"In such case the court will compel the trustees to carry out the particular purpose even though in the opinion of the court a more useful disposition of the property might be made." Restatement, 2 Trusts, p. 1218, sec. 399.

In the instant case the doctrine cannot be applied, because it is perfectly possible and practicable to carry out the wishes of the testator in the fashion that he intended. The mere fact that the Beloit Foundation declined to administer the entire fund did not make it impossible for the testator's wishes to be realized. Earl E. Berry, as an alternative in this contingency, directed that the loan fund was to be given to the colleges to be used as a loan fund. *Cy pres* is not applicable where the will provides for a gift over or an alternative disposition upon the impossibility of carrying out the primary method of effecting the testator's intent. Only when the alternatives posed

by the testator are exhausted and each of them have proved to be impossible, illegal, or impracticable, need the court resort to *cy pres*. In the absence of such necessity, it is error to invoke the doctrine—to do so would permit a court to substitute its judgment and discretion and dispositive intent for that of the testator. The doctrine of judicial *cy pres* can be invoked only for the purpose of effecting the testator's intent, not to frustrate it.

The bequest to Beloit College and to the University of Cincinnati clearly has a legal purpose, perfectly possible to put into effect. The doctrine of *cy pres* cannot be used to prevent the transfer of two thirds of the trust residue to the colleges in equal shares. They are both educational institutions, having the grant in their charters of specific corporate powers to accept and administer such gifts. Neither institution has declined the gift nor an interest in the fund. Their acceptance of the bequest in the absence of an express renunciation is to be presumed. *Estate of Mead* (1938), 227 Wis. 311, 325, 277 N. W. 694, 279 N. W. 18. They are entitled to receive the funds as designated by Earl E. Berry.

The trial court arrived at the additional conclusion that circumstances "have so changed since the execution of the will by the testator so as to render impracticable and inexpedient the granting of loans," and it therefore decreed that the fund was to be used for scholarships instead. The record is devoid of any evidence that would support this conclusion. The court also approached this problem by assuming that the funds were to be used only by students from Rock county, and therefore concluded that they could not be sufficiently utilized at those colleges. We have concluded above that the funds need not be limited in their use to Rock county students. They are limited to use by students at Beloit College or at the University of Cincinnati, with *preference* being given to Rock county students who may in the future attend those schools. The number of Rock county students at those institutions now or in the future is entirely immaterial.

There is no evidence to show that these funds can or will not be utilized as the testator intended. There is, in fact, evidence to show that both institutions need additional funds for student-loan purposes. We cannot conclude as a matter of judicial notice that there is evidence of such a superfluity of funds available for loans to students as to make this method of student aid obviously unneeded, ineffectual, and impracticable. Rather, we can take judicial notice that loans are a common form of student assistance. If evidence that loans could not be used had been produced, the doctrine of *cy pres* might possibly have been invoked to direct the use of these funds for scholarships or other related student-aid purposes in order to carry out as near as possible the testator's intent. It should be noted that such a utilization of *cy pres* would not defeat the right of the colleges to administer the funds, but would only alter the purposes for which the funds could be disbursed. There may well be a greater need for scholarship funds than for loans. Perhaps greater social good can be accomplished by using these funds for direct grants to students, but it is not for this or any court to determine the relative wisdom of a bequest and to substitute its judgment for that of the testator. The function of the court is to probate wills and not to write them.

We also conclude that the will makes outright gifts to the colleges and that trusts in the usual and technical sense were not created. The will provided that the "Earl E. Berry Student Loan Fund . . . shall be turned over" to the colleges. The expression "turned over" is clearly indicative of the relinquishment of any control by the executor and the vesting of ownership and control in the colleges. The clause expresses a donative intent, and we conclude that a gift results. A gift to a charitable or eleemosynary corporation does not create a trust in the technical sense.

". . . where property is left by will to a charitable corporation, whether it may be used for the general purposes of the corporation or whether the devise or bequest is subject to restrictions as to its use, and the property is

conveyed by the executor to the corporation, the corporation is not thereafter bound to account as if it were a testamentary trustee." 4 Scott, Trusts (2d ed.), p. 2559, sec. 348.1.

Restatement, 2 Trusts, p. 1093, ch. 11, declares the general rule to be:

"Where property is given to a charitable corporation, a charitable trust is not created, even though by the terms of the gift the corporation is directed . . . to use the property only for a particular one of its purposes."

We therefore conclude, in accordance with the generally accepted statements of the law, that no trust was created that requires an accounting as a testamentary trustee.

In so holding, we are not unmindful of this court's opinion in *Estate of Rowell* (1946), 248 Wis. 520, 522, 22 N. W. (2d) 604. The court there construed the following provisions of a will:

"I give and bequeath to the Salvation Army of Appleton, Wisconsin, the sum of ten thousand dollars ($10,000). It is my wish that this money be expended by the Salvation Army for the benefit of the needy people in the city of Appleton, Wisconsin."

The court held that this clause created a charitable trust. The court concluded that if the words concerning the use of the money were mandatory rather than precatory, a testamentary trust is created. We do not find this distinction valid. It apparently rests on the assumption that the mandate of the testator can only be assured of enforcement by the trust device with its incumbent duties to account. This is not correct, since sanctions are available, even when there is not a formal trust, to enforce the directions of the testator. As the authors of the Restatement point out:

"The Attorney General can maintain a suit not only to enforce a charitable trust but also to compel a charitable corporation to apply property held by it to the charitable purposes for which it is given to the corporation." Re-

statement, 2 Trusts, p. 1094, ch. 11. (See also 4 Scott, Trusts (2d ed.), p. 2753, sec. 391; Bogert, Trusts (2d ed.), p. 317, sec. 411; sec. 231.34, Stats., on the powers and duties of the attorney general in this regard.)

The New York case of *St. Joseph's Hospital v. Bennett* (1939), 281 N. Y. 115, 22 N. E. (2d) 305, illustrates the supervisory power of the attorney general over a charitable gift although no trust arose in the technical sense.

It should also be noted that *Rowell, supra,* has previously been explained by this court. It is not to be interpreted to mean that all testamentary gifts restricted to a particular purpose create technical trusts. As this court said in *Estate of Silverthorn* (1957), 274 Wis. 453, 457, 80 N. W. (2d) 430:

"Since the terms of the will fall short of what is usual in setting up a trust with individual trustees, but correspond exactly with what one would expect a competent draftsman to use in specifying a gift to the corporation, we are persuaded that the latter was intended.
"*Estate of Rowell,* 248 Wis. 520, 22 N. W. (2d) 604, cited by appellants, is not to the contrary. There the legatee designated by the will as construed by the court was not a corporation nor a legal entity, and therefore could not take title, so in order to sustain the bequest and effectuate the obvious wish of the testator, the court had to find a trust and appoint a qualified trustee to take title. Here the named beneficiary is a corporation and no such judicial intervention is required to carry out the testamentary intent."

We have also considered the language of this court in *Estate of Briggs* (1926), 189 Wis. 524, 208 N. W. 247, and *Estate of Bletsch* (1964), 25 Wis. (2d) 40, 130 N. W. (2d) 275. In *Bletsch, supra,* page 48, relying on *Briggs,* we said that:

"In a sense, it can perhaps be said that a charity always receives the gift in trust for its purposes."

We pointed out, however, that such gifts are not necessarily in trust, but that, nevertheless, the doctrine of

judicial *cy pres* is available, when necessary, in the event of a gift to a charity in the same manner that it would be applicable to a trust. Such gift, however, does not create a trust unless one is necessary to carry out the testator's purpose.

There is no reason to assume that the testator's direction will not be respected and enforced in Ohio as well as in Wisconsin even though a trust in the technical sense is not created.

It should be noted that Ohio Revised Code, secs. 109.23–109.33 and 109.99 provide for intervention by the attorney general.

It is also clear that the Beloit Foundation takes the remaining one third outright to "be used by it for such charitable purposes as it shall from time to time determine." The Beloit Foundation, though renouncing the option to administer the two thirds of the estate that was denominated as the "Earl E. Berry Student Loan Fund," specifically stated in its petition of July 14, 1964, that it "does accept the remaining one-third." The articles of incorporation of the Beloit Foundation that are a part of the record indicate that the Foundation has the capacity to accept the gift and to administer the fund. It is authorized to receive and disburse money "for religious, charitable, scientific, literary, and educational purposes."

Moreover, the express language of the will makes it manifest that it is the Foundation that shall determine the charitable purposes for which the gift from the Earl E. Berry trust shall be spent. There is nothing in the will that indicates that the testator intended that the Foundation's discretion was to be influenced by the fact that the remaining two thirds of the estate was to be used for educational purposes. The bequest to the Foundation was separate and distinct.

*By the Court.*—Judgment and order reversed, with directions to enter judgment directing that one third of the trust fund be distributed to the Board of Trustees of

Beloit College and that one third of the trust fund be distributed to the University of Cincinnati, in each case to be used by the institution as a loan fund for the assistance of its students, preferably students from Beloit, Wisconsin, and Rock county, Wisconsin; and that the remaining one third of the trust fund be distributed to Beloit Foundation, Inc., the income thereof and, in the discretion of the Foundation, portions of the principal to be used by it for such charitable purposes as it shall from time to time determine.