PENELOPE ALAILIMA-UTU, MATAVAI SAUNI, TASI LILI'O, and YWCA OF SAMOA, Plaintiffs

v.

TOFIGA TUFELE, BERTHA SAMUELU, FAIVA PEREIRA, LA'ALOI LILI'O, and YWCA OF AMERICAN SAMOA, Defendants

High Court of American Samoa
Trial Division

CA No. 25-90

August 12, 1992

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and MAILO, Associate Judge.

Counsel: For Plaintiffs, Charles V. Ala'ilima
For Defendants, Gata E. Gurr

The individual litigants here were all, at one time, members of an unincorporated association which publicly held itself out as the Tutuila and Manu'a branch of the YWCA of Samoa (hereinafter the "association"). The association was affiliated with the "YWCA of Samoa," a corporate body (hereinafter the "corporation") organized in 1977 under the laws of Western Samoa. The corporation was, in turn,

affiliated with the YWCA World Council (hereinafter the "world body"), to which the corporation pays an annual affiliation fee.[1] This fee was collected from the membership--which not only comprised the association but also separate branches from the islands of Upolu and Savai'i--in the way of annual dues. These dues were determined at the fono tele, the annual general meeting of the three island branches, convened at the end of each year. Save for certain collective concerns like the annual affiliation fee payable to the world body, each island branch operated more or less autonomously, raising its own funds and developing its own parochial programs and projects.

In 1989, however, the defendants, who were then principal officers of the association, instituted a secessionist movement to get out completely from under the umbrella of the corporation. They stopped paying the annual dues to the corporation and incorporated a local entity named the "YWCA of American Samoa," apparently with the objective of dissolving the association and assuming its assets, as well as its role, in the territory. Since incorporating, however, the defendants have failed to secure world-body recognition as a YWCA affiliate in its own right. The world body continues to recognize the corporation and its three island branches as the only affiliated YWCA for the Samoas.

Plaintiffs oppose the secession and they filed suit to freeze the association's assets to prevent the defendants' use thereof. These assets are essentially funds--$7,800 now on deposit with the Clerk of Courts--comprised of dues and monies which were publicly solicited through the association's various fund-raising activities in 1987-1988 under the YWCA banner. At the time, fund-raising was geared towards securing a clubhouse for association activities. Since the split, the plaintiffs and those members opposed to a divorce with Western Samoa have actively continued to promote the activities of the association with, among other things, a renewed membership drive; they continue to pay the annually assessed dues towards the world body's affiliation fee; they have organized as a local eleemosynary corporation known as the "YWCA of Tutuila and Manu'a," and as such have rented a building in Tafuna for corporate headquarters. Plaintiffs seek to retain use of all the funds.

---

[1] For an extensive discussion of the general purposes and activities of the YWCA, *see In re Briggs' Estate*, 208 N.W. 247, 248-49 (Wis. 1926).

Defendants argue that the American Samoa branch as an unincorporated association was not a legal entity capable of holding property in American Samoa. They claim dissolution of the association and thus seek to have the funds divided up among the members as tenants in common.[2] Alternatively, defendants suggest a 50%-50% split of the assets as being an equitable division. The defendants further argue that the disputed funds cannot be claimed by the corporation since it could not have done business in the territory without first complying with the requirements of local law, A.S.C.A. Title 30, Chapter 3, pertaining to the registration of foreign corporations.

## DISCUSSION

The issue before us is what to do with these funds. We need not here address the issue whether a foreign corporation, operating within American Samoa without complying with the provisions of A.S.C.A. Title 30, Chapter 3, can hold property in the territory; the funds in question were undisputedly held by the YWCA branch in American Samoa and not by the corporation.

For the reasons given, we conclude that the funds should be awarded to the plaintiffs on behalf of the association. First, the evidence does not sustain the conclusion that there was a voluntary dissolution of the association by common consent of its members. Notwithstanding the actions of the defendants, the association continued to remain alive and active, pursuing the ends of its existence. Significantly, it alone continues to enjoy the recognition of the world body as the legitimate YWCA affiliate in the territory. We see nothing on the facts to warrant a decree of involuntary dissolution.

On the other hand, the defendants, in their ceasing to pay the customary annual dues, widely acknowledged by the members as a prerequisite to membership, had thereby effectively withdrawn from the association. In the absence of a provision in the constitution or bylaws of an unincorporated association giving its members a severable interest in the association's assets, the general rule is that a withdrawing member

---

[2] In the absence of authorizing statute, the general rule at common law is that an unincorporated association is not a legal entity capable of holding or acquiring property. *See* 6 Am. Jur. 2d *Associations & Clubs* § 13. "Property ostensibly held by such unincorporated bodies is deemed to belong to the members jointly or as tenants in common." *Id.*

loses title to associational property, which stays in the members remaining in the association. 6 Am. Jur. 2d *Associations & Clubs* § 23; 7 C.J.S. *Associations* § 26(b). Indeed,

> [t]his rule applies even where a number of members secede in a body, and although they constitute a majority, and organize a new association. In such case, the remaining members, and only they, are entitled to the entire funds and property of the association, so long as they continue to keep it alive and adhere to its purposes.

7 C.J.S. *Associations* § 26(b), at 71. Here, we find nothing in the association's organic law giving its individual members a severable interest in the association's assets and accordingly find no reason to permit a diversion of funds from the organic purpose for which such funds were raised. *See also Liggett v. Koivunen*, 34 N.W.2d 345 (Minn. 1948).

Judgment will enter accordingly in favor of plaintiffs as aforesaid.

It is so ordered.