In re Charitable Trust, known as the Oshkosh Foundation: State and another, Appellants, v. First Wisconsin National Bank of Oshkosh, Trustee, Respondent.

*No. 141. Argued November 26, 1973.—Decided December 21, 1973.*
(Also reported in 213 N. W. 2d 54.)

For the appellants the cause was argued by *Stephen M. Sobota,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general, and *John W. Pence,* Oshkosh city attorney.

For the respondent there was a brief by *Thompson & Thompson* of Oshkosh, and oral argument by *Andrew C. Thompson.*

ROBERT W. HANSEN, J.   The trustee puts three arrows to its bow in seeking to enlarge the geographical limits of the trust agreement from the city limits to the school district limits. Two arrows fall short of the target, and the third cannot be fitted to this bow.

## I.  *Cy pres doctrine.*

At the hearing, the trustee contended that the *cy pres* doctrine warranted the amendment of the trust agreement to include inhabitants and residents of the school district living outside the city limits. The trial court agreed. *Cy pres* is the common-law doctrine,[3] codified

---

[3] *See:* 4 Scott, *Trusts* (3d ed. 1967), p. 3084, sec. 399, stating: ". . . Where property is given in trust for a particular charitable purpose, the trust will not ordinarily fail even though it is impossible to carry out the particular purpose. In such a case the court will ordinarily direct that the property be applied to a similar charitable purpose. The theory is that the testator would have desired that the property be so applied if he had realized that it would be impossible to carry out the particular purpose. . . ."

by statute in this state,[4] that provides " '. . . when a charitable purpose cannot be fulfilled according to its terms, equity will attempt to do the next-best similar charitable thing.' " [5] At common law and under the statute, a finding is required that complying with the trust's stated purpose has become *impossible, unlawful or impracticable.* No argument is here made that the purpose of the trust has become either impossible or illegal. Rather it is claimed that compliance with the trust has become "impracticable" because it has become "unfair." The italicized words are not synonyms. The trustee, in substance, claims only that the use of school district limits would be more useful and desirable than the use of city limits as prescribed in the trust.[6] But *cy pres* does not warrant a court substituting a different plan for that set forth in the trust solely because trustee or court, or both, believe the substituted plan to be a

---

[4] Sec. 231.11 (7) (d), Stats. 1969 (replaced by sec. 701.10 (2) (a), Stats. 1971) provided: "Where the fulfillment of the special purpose expressed in a trust or other gift for charitable or public purposes is or *becomes impracticable, impossible or unlawful,* it shall be the duty of the courts by a liberal construction of the trust or gift to ascertain the general purpose of the donor and to carry it into effect in the nearest practicable manner to the expressed special purpose . . . ."

[5] *Estate of Berry* (1966), 29 Wis. 2d 506, 515, 139 N. W. 2d 72, quoting *Saletri v. Clark* (1961), 13 Wis. 2d 325, 329, 108 N. W. 2d 548. *See also: Estate of Bletsch* (1964), 25 Wis. 2d 40, 45, 130 N. W. 2d 275.

[6] 4 Scott, *Trusts* (3d ed. 1967), pp. 3119, 3120, 3122, sec. 399.4, stating: ". . . It is difficult, of course, to draw any exact line between the situations where it would be impracticable to carry out the specific directions of the testator and situations where it would merely be undesirable to do so. The distinction is one of degree rather than one of kind.

". . .

"In a number of cases it has been held that the doctrine of cy pres was inapplicable because it was practicable even if undesirable to carry out the particular purpose designated by the testator."

better plan.[7] Where it was neither claimed nor established that there was a lack of qualified scholarship recipients or charitable requests within the limits set by the trust,[8] there is no basis for holding that it has become, in the words of the statute, "impracticable, impossible or unlawful" to comply with the express terms and limits of the trust.[9]

## II. *Equitable approximation.*

On appeal, the trustee suggests that, while the trial court used the *cy pres* doctrine, its permitting amendment of the trust rests rather on the applicability of the doctrine of approximation or equitable deviation. Both a new statute,[10] and one in effect at the time of this

---

[7] Bogert, *Trusts and Trustees* (2d ed.), p. 453, sec. 439, stating as to applicability of *cy pres* doctrine: ". . . The court will not substitute a new scheme merely because the trustee or the court believes it would be a better plan than that which the settlor provided. . . ." *See also:* 4 Scott, *Trusts* (3d ed. 1967), p. 3119, sec. 399.4, stating: ". . . Where property is given in trust for a particular charitable purpose and it is legal and possible and practicable to carry out that purpose, the courts will not ordinarily permit the property to be applied to other purposes, although the other purposes appear to the court to be more useful and desirable than the purpose designated by the testator."

[8] The vice-president and trust officer of the bank-trustee testified that there was no lack of qualified scholarship recipients residing in the city of Oshkosh and that, in fact, some such qualified student applicants had been denied scholarships due to lack of funds. He also testified that the foundation had not been able to satisfy all the qualified charitable requests made by agencies within the city of Oshkosh.

[9] *See: Estate of Berry, supra,* footnote 3, at page 515, holding: "In the instant case the doctrine [*cy pres*] cannot be applied, because it is perfectly possible and practicable to carry out the wishes of the testator in the fashion that he intended. . . ."

[10] Sec. 701.10 (2) (b), Stats. 1971, provides: "If any administrative provision of a charitable trust or part of a plan set forth by the settlor to achieve his charitable purpose is or becomes im-

petition,[11] embody the common-law concept.[12] This corollary to *cy pres* derives from the two-part character of a trust agreement,[13] and refers to conflicts developing between the two,[14] with courts, at common law or

practical, unlawful, inconvenient or undesirable, and a modification of such provision or plan will enable the trustee to achieve more effectively the basic charitable purpose, the court may by appropriate order modify the provision or plan."

[11] Sec. 231.11 (7) (c), Stats. 1969, provided: "In the absence of a clearly expressed intention to the contrary, no trust or other gift for charitable or public purposes whether in real or personal property shall be invalid because the specific method provided by the donor for the accomplishment of the general purpose indicated by him is or becomes for any reason impracticable, impossible or unlawful."

[12] *See:* 4 Scott, *Trusts* (3d ed. 1967), p. 2983, sec. 381, stating: "The power of a court of equity to permit or direct a deviation from the terms of the trust is at least as extensive in the case of charitable trusts as it is in the case of private trusts. The courts will direct or permit a deviation from the terms of the trust where compliance is impossible or illegal, or where owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust. . . ." *See also:* 2 Restatement 2d, *Trusts*, p. 273, sec. 381; 14 C. J. S., *Charities*, pp. 510, 511, sec. 50.

[13] Bogert, *Trusts and Trustees* (2d ed.), pp. 128, 129, sec. 561, states: "Every instrument creating a private trust contains two parts, namely, (1) that in which the settlor describes the beneficiaries who are to obtain financial benefits, fixes the size of those benefits, and in many cases states the purposes of the trustor in providing for these benefits; and (2) the portion of the instrument in which the settlor provides for the methods by which the trustee is to employ the trust property in such a way as to secure for the cestuis the intended advantages . . . ."

[14] *Id.* at page 129, states: ". . . it occasionally develops in the course of the administration of a trust that adherence to the provisions regarding means, methods, and details will either render it impossible or extremely difficult for the trustee to execute the clauses of the trust having to do with the financial benefits intended to be received by the cestuis, and the court is faced with the alternative of abiding by the settlor's directions in all respects or giving preference to one clause over another. Insistence on obedience to all the administrative provisions will prevent the

by statute in this state, to give preference to dispositive provisions over administrative directives.[15] However, this doctrine, it follows, is used or usable only to give preference to dispositive over administrative provisions. It permits only the amending of administrative terms in a trust.[16] In the case before us, the class of beneficiary limitation is not such an administrative provision.[17] The provision requiring members of the foundation com-

trustee from securing for the beneficiaries the financial gains which the settlor intended them to have. On the other hand if the court directs the trustee to ignore one of the terms as to methods of administration, it may be argued that the court is altering the trust and that it has no power to remake wills or deeds but rather merely the power to enforce them."

[15] *Id.* at pages 129, 130, states: "In this dilemma the courts take a position which seems very reasonable and justifiable. They take the view that where there is a conflict between a dispositive provision and an administrative direction the latter should give way. The primary and fundamental objects of the trustor are to make certain property transfers to the cestuis and thus secure for them certain advantages, as, for example, support in comfort, education, or a life of luxury. The terms of the trust having to do with the manner in which the trustee should act in order to obtain the primary objectives are not on the same level of importance but are rather minor and auxiliary. The jurisdiction of equity to enforce trusts should and does include power to vary the details of administration which the settlor has prescribed in order to secure the more important result, namely, obtaining for the beneficiaries the advantages which the settlor stated he wished them to have."

[16] *Id.* at page 133, states: "The power to permit or direct deviation as to administrative clauses does not include a power to change the dispositive clauses of the instrument, to remake the trust, or to take property from one beneficiary and give it to another, even though the court may think that the settlor made unwise or unnatural gifts of his property. . . ."

[17] *See: Craft v. Shroyer* (1947), 81 Ohio App. 253, 273, 74 N. E. 2d 589, stating: ". . . In ordering a deviation the court does not touch the question of the purpose or object of the trust, or vary the class of beneficiaries, or divert the fund from the charitable purpose designated."

mittee to be residents of the city of Oshkosh would be such an administrative provision. But, for equitable approximation or deviation to become applicable, some conflict between the committee residency requirement and the purposes of the trust would have to be located. We find no such conflict. No evidence was introduced that the committee would be unable to serve its purpose or fulfill its function without nonresident committee members. Equitable approximation or deviation means only that, where there is a conflict between a dispositive provision and an administrative direction, the latter is to give way. Where there is no conflict, the equitable approximation or deviation doctrine is not available to vary the details of administration which the trust prescribes.

### III. *Reasonable interpretation.*

On appeal, during oral argument, the trustee-respondent argued that it was an entirely reasonable interpretation of the provisions of the trust for the trustee to aid charitable agencies serving both residents and inhabitants of the city of Oshkosh and persons residing outside the city limits. The reference was to acknowledged contributions from the foundation to United Fund agencies, the Winnebago County Association for Retarded Children, Big Brothers of Winnebago County and Mercy Hospital, all of which serve nonresidents as well as residents of the city of Oshkosh. Arguably, the same issue of inclusion under a reasonable interpretation of the trust provisions, left unchanged, might be raised as to nonresident students attending schools within the city. However, this is the arrow that cannot be fitted to this bow. Even if the issue of reasonable interpretation of trust provisions had been raised at the hearing, the trial court would have been required, as is this court, to hold that the interpretation of the provisions of a charitable trust

is not before the court in an action to change or alter the trust. This is not a petition for construction of the terms of a trust.[18] It is a petition to change the class of beneficiaries served by the trust and the composition of the foundation committee. While not an action to break the trust, it is an action to amend and alter the trust by enlarging its provisions. In an action for change, there is neither invitation nor reason to consider what is a reasonable interpretation of the terms of the trust, left unchanged.

As one court has put it, the clearly expressed intention of the maker of the trust ". . . should be zealously guarded by the courts, particularly when the trust instrument reveals a careful and painstaking expression of the use and purposes to which the settlor's financial accumulations shall be devoted. . . ."[19] We hold that neither the doctrines of *cy pres* nor equitable approximation apply to the petition before us. As to the matter of reasonable interpretation, we hold that construction of the terms of the trust is not before us in an action for amending the trust. So holding, reversal is required, with directions to the trial court to dismiss the petition of the trustee.

*By the Court.*—Order reversed, and cause remanded with directions to dismiss the petition of the trustee for the Oshkosh Foundation.

---

[18] In an action for construction of the trust instrument, questions involving ambiguity of terms or powers of the trustee may be resolved. *See:* Bogert, *Trusts and Trustees* (2d ed.), p. 87, sec. 559; 2 Restatement 2d, *Trusts*, p. 282, sec. 394; p. 654, sec. 259; 4 Scott, *Trusts* (3d ed. 1967), p. 3018, sec. 394.

[19] *First Nat. Bank & Trust Co. of Wyoming v. Brimmer* (Wyo. 1973), 504 Pac. 2d 1367, 1371, holding that where income from a trust was to be used to provide scholarships to University of Wyoming and Casper Community College for needy students of Cheyenne and Casper public high schools, trustee had no authority under trust agreement to provide scholarships to students to attend Laramie County Community College.