In re the Matter of:
Madison Community Foundation:

League of Women Voters,
Appellant,

v.

Madison Community Foundation,
Respondent.

Court of Appeals

*No. 2004AP2036. Submitted on briefs January 13, 2005.
—Decided October 13, 2005.*

2005 WI App 239

(Also reported in 707 N.W.2d 285.)

On behalf of the appellant, the cause was submitted on the briefs of *James A. Jaeger* and *Maureen A. Lokrantz* of *Hill, Glowacki, Jaeger & Hughes, LLP*, Madison.

On behalf of the respondent, the cause was submitted on the brief of *Marie A. Stanton* and *Andrew W. Erlandson* of *Hurley, Burish & Milliken, S.C.*, Madison.

Before Lundsten, P.J., Dykman and Deininger, JJ.

¶ 1. LUNDSTEN, P.J. The League of Women Voters appeals an order of the circuit court approving a petition by the Madison Community Foundation to amend its charitable trust instrument. The League argues that the circuit court erred when it determined that WIS. STAT. § 701.10(2)(b) (2003–04)[1] is not applicable to the Foundation's request for circuit court approval of a change to an administrative trust provision. In the alternative, the League argues that if § 701.10(2)(b) does not apply, the circuit court erred in approving the proposed trust amendment because the Foundation failed to meet its burden of proof under the applicable trust provision. We disagree and affirm the circuit court.

### *Background*

¶ 2. The Madison Community Foundation is a charitable trust.[2] The Foundation is governed by a

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The Madison Community Foundation was originally established as the Madison Community Trust Fund in 1942. In

fifteen-member Board of Governors. Prior to this proceeding, eight members of the Board were designated by appointing authorities. The League of Women Voters was one such appointing authority. The remaining seven members of the Board were "at-large" members. At-large members are appointed by existing Board members.

¶ 3. Article XI of the trust instrument provides a procedure for amending administrative provisions of the trust. In 2002, the Board used the procedure in Article XI to amend the trust instrument. The Board voted to amend the trust to eliminate the League as an appointing authority and replace that vacancy with an at-large member. The amendment required a two-thirds vote, and it passed by a vote of fourteen to one. Pursuant to Article ·XI of the trust instrument, the Board provided notice to the Attorney General and filed a petition seeking court approval with the Dane County Circuit Court. In that petition, the Foundation proffered the following reason for the amendment:

> After study and discussion, the Board of Governors of the Madison Community Foundation determined, in the exercise of its reasonable judgment, that making the seat on its Board of Governors which is currently filled by an appointment by the League of Women Voters of Dane County into an At-Large position would allow the Foundation to more effectively carry out its charitable purposes by providing it with the flexibility to meet the evolving needs of the community as those need[s] change over time and to try to ensure that the Board continues to have a broad community wide perspective. It also would allow the Foundation to be more flexible in addressing the organization's needs for

1977, the trust provision at issue here was adopted. Neither the League nor the Foundation suggests that these facts matter for purposes of this appeal.

131

Board expertise in various areas. Having more At Large positions would allow the Board to review the strengths and weakness[es] of the appointed members and to fill in gaps, as needed. The Board noted that the League of Women Voters of Dane County has a relatively small membership and an even smaller number of active members.

¶ 4. The League objected to the amendment, raising the same arguments that it makes on appeal.[3] The circuit court rejected the League's arguments and approved the amendment. In particular, the circuit court rejected the League's contention that WIS. STAT. § 701.10(2)(b) applied to a review of the Foundation's petition. The court determined that it must review the Board's action under the standard articulated in *Filzen v. Headley*, 252 Wis. 322, 31 N.W.2d 520 (1948), namely, that discretion exercised by trustees must be upheld "[s]o long as trustees act in good faith and from proper motives and within the bounds of a reasonable judgment under the terms and conditions of the trust." *Id.* at 326. Using that standard, the circuit court concluded that the Foundation had not abused its discretion in amending the trust instrument, and ordered that the petition for amendment be approved. It is from that order that the League appeals.

### *Discussion*

#### *Applicability of WIS. STAT. § 701.10(2)(b)*

¶ 5. The Foundation is a "charitable trust" within the meaning of WIS. STAT. § 701.01(2). This fact brings into play the possibility that an amendment to an

---

[3] The Attorney General objected to the amendment and participated before the circuit court, but has opted not to participate in this appeal.

administrative provision of the trust instrument is controlled by WIS. STAT. § 701.10(2)(b).

¶ 6. Trust instruments have two types of provisions: "dispositive provisions" and "administrative provisions." Dispositive provisions may name beneficiaries, determine the amount or size of the financial benefits the beneficiaries will receive, and state the purpose of the trust. Administrative provisions govern how the trust is managed to accomplish its purpose. *See* GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 561, at 225–26 (rev. 2d ed. 1980). WISCONSIN STAT. § 701.10(2)(b) authorizes courts to modify administrative provisions of charitable trust instruments under certain circumstances. That statute provides:

> If any administrative provision of a charitable trust or part of a plan set forth by the settlor to achieve the settlor's charitable purpose is or becomes impractical, unlawful, inconvenient or undesirable, and a modification of such provision or plan will enable the trustee to achieve more effectively the basic charitable purpose, the court may by appropriate order modify the provision or plan.

The League argues that this statute applies to the proposed trust amendment in this case because the statute applies to *all* amendments to administrative provisions of charitable trust instruments. In the League's view, the statute clearly states that a court may only approve a trust amendment to an administrative provision when that provision, in the words of the statute, "is or becomes impractical, unlawful, inconvenient or undesirable, and a modification of such provision . . . will enable the trustee to achieve more effectively the basic charitable purpose." The League argues

that the circuit court erred when it concluded that § 701.10(2)(b) does not apply to the Foundation's request for approval of an administrative change to the trust instrument. We disagree. Section 701.10(2)(b) does not apply to the Foundation's request for court approval of an amendment to the trust.

¶ 7. We agree with the Foundation that the flaw in the League's argument stems from the League's failure to acknowledge the difference between (1) a statute that authorizes a court to order modification and (2) a specific trust provision that provides a mechanism for altering the trust. Nothing in the text of Wis. Stat. § 701.10(2)(b) suggests that it overrides the provisions of a trust. Simply put, if a trust instrument provides a specified procedure for altering administrative provisions of the trust, there is no reason to suppose the legislature intended that § 701.10(2)(b) be used to override such a procedure.

¶ 8. In this case, the trust instrument provides a procedure for altering the administrative provisions of the trust. Article XI provides:

> This Trust Agreement may be amended or modified from time to time with the approval of the Circuit Court for Dane County, Wisconsin, and upon notice to the Attorney General for the State of Wisconsin by the affirmative vote of two-thirds of all persons then constituting the Board of Governors of the Foundation at a meeting of the Board or by unanimous written action without a meeting whenever necessary or advisable for the more convenient or efficient administration of the Foundation, or to enable the Board of Governors to carry out the purpose of the Foundation more effectively, but no such amendment or modification shall alter the purpose stated in the Trust Agreement that this Foundation be operated exclusively for charitable purposes.

The functioning of this provision is fundamentally different than that set out in Wis. Stat. § 701.10(2)(b). The plain language of the statute authorizes *circuit courts* to modify administrative trust provisions by order. Courts may order such a modification where an administrative provision "is or becomes impractical, unlawful, inconvenient or undesirable, and a modification of such provision or plan will enable the trustee to achieve more effectively the basic charitable purpose." Wis. Stat. § 701.10(2)(b).

¶ 9. In contrast, Article XI contemplates judicial *approval* of board-adopted amendments. It presents the court with a yes or no decision: either approve the amendment or reject it. Article XI authorizes the Board to proactively adopt amendments the Board deems "necessary or advisable for the more convenient or efficient administration" of the trust, subject to circuit court approval. This standard is less demanding than the one found in Wis. Stat. § 701.10(2)(b).

¶ 10. Further, we see no conflict between the statute and the trust provision in this case. Neither the League nor the Foundation asked the circuit court to exercise its power under Wis. Stat. § 701.10(2)(b) to fix a flawed trust. Rather, the Foundation asked the circuit court to "approve" an amendment it had adopted under the procedure specified in the trust itself.

¶ 11. The League relies on *Oshkosh Foundation v. First Wisconsin National Bank of Oshkosh*, 61 Wis. 2d 432, 438–39, 213 N.W.2d 54 (1973), to support its proposition that Wis. Stat. § 701.10(2)(b) is the sole avenue for modifications of trust instruments. That reliance is misplaced. In *Oshkosh Foundation*, an amendment to an administrative provision governing the composition of a foundation's board was sought under the doctrine of equitable deviation, a doctrine

135

similar in function and purpose to § 701.10(2)(b).[4] *See Oshkosh Foundation*, 61 Wis. 2d at 438–41. Unlike here, the *Oshkosh Foundation* court did not address whether such an amendment was authorized by the trust instrument itself. Obviously then, the *Oshkosh Foundation* decision did not address whether either the equitable deviation doctrine, or § 701.10(2)(b), overrides a trust provision like the one at issue here. Accordingly, we find no guidance in *Oshkosh Foundation*.[5]

---

[4] We use the term "equitable deviation" in this opinion, but point out that *Oshkosh Foundation v. First Wisconsin National Bank of Oshkosh*, 61 Wis. 2d 432, 213 N.W.2d 54 (1973), indicates that the doctrine goes by two names: "equitable deviation" and "equitable approximation." *Id.* at 438.

[5] We note that both the League and the Foundation assume that the court in *Oshkosh Foundation* is accurate when it states that Wis. Stat. § 701.10(2)(b) "embod[ies] the common-law concept" of "equitable deviation." *Oshkosh Foundation*, 61 Wis. 2d .at 438–39. We question the accuracy of this statement because the statutory standard appears to be different than the equitable deviation standard articulated by the *Oshkosh Foundation* court.

The statutory standard in Wis. Stat. § 701.10(2)(b) confers on courts the authority to order a modification to an administrative provision of a charitable trust when the provision "is or becomes impractical, unlawful, inconvenient or undesirable, and a modification of such provision . . . will enable the trustee to achieve more effectively the basic charitable purpose." In contrast, the equitable deviation doctrine seemingly confers more limited power. According to *Oshkosh Foundation*, the equitable deviation doctrine only permits a court to order a change to an administrative provision "where there is a conflict between a dispositive provision and an administrative direction." *Oshkosh Foundation*, 61 Wis. 2d at 441. "Where there is no conflict, the . . . deviation doctrine is not available to vary the details of administration which the trust prescribes." *Id.* Thus,

¶ 12. The Foundation seeks to amend the trust under the trust's grant of power to the Board to make such amendments. The Foundation does not seek to invoke the court's power to order a change in the trust's administrative provisions. We agree with the circuit court that WIS. STAT. § 701.10(2)(b) is not applicable.

*The Proper Interpretation and Application of Article XI of the Trust Instrument*

¶ 13. The League argues that if WIS. STAT. § 701.10(2)(b) does not apply, the Foundation still failed to meet the burden imposed by Article XI of the trust.

---

§ 701.10(2)(b) permits a court to act when an administrative provision becomes "inconvenient or undesirable" and the change will enable the "more effective[]" achievement of the charitable purpose. In contrast, under the equitable deviation doctrine, a court may not act unless there is a conflict between an existing administrative provision and the trust's purpose.

The facts in *Oshkosh Foundation* make clear that the then newly enacted statute, WIS. STAT. § 701.10(2)(b), did not apply to the case at hand because its enactment postdated the trial court's action. *See Oshkosh Foundation,* 61 Wis. 2d at 438–39. The supreme court commented in passing that § 701.10(2)(b) embodied the equitable deviation doctrine, but the court did not purport to apply the statute and was instead plainly applying the equitable deviation doctrine itself to the facts at hand. *See Oshkosh Foundation,* 61 Wis. 2d at 438–41. Therefore, any suggestion by the supreme court that § 701.10(2)(b) contains the same standard as the common law doctrine of equitable deviation is dictum. *See State v. Sartin,* 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996) ("Dicta is a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it."). Of course, this footnote is itself dictum, but we include it in the hope that it will assist future litigants.

The League asserts: "Although [the Foundation] may have obtained a two-thirds vote, *it must still prove* [to the circuit court] that the addition of an at-large member in place of the League as an appointing authority" meets the standard for an amendment set forth in Article XI. The League, however, provides no analysis to back up this assertion. As further explained below, we will not attempt to fill this vacuum, especially because the validity of the League's assertion is far from apparent.

¶ 14. The threshold issue is not whether the amendment must meet the standard set forth in Article XI. Obviously it must. A proper amendment to an administrative provision under the trust terms must, in the words of Article XI, be "necessary or advisable for the more convenient or efficient administration of the Foundation, or [it must] enable the Board of Governors to carry out the purpose of the Foundation more effectively." Rather, the threshold issue is the proper interpretation of the Article XI phrase, "with the approval of the [court]." That is, what sort of "approval" role does the trust contemplate for the court?

■

¶ 15. Trust instruments are construed using the same principles of construction as wills. *Uihlein v. Uihlein*, 11 Wis. 2d 219, 225, 105 N.W.2d 351 (1960). In essence, the task is to ascertain the intent of the donor. *Id.*

¶ 16. Under Article XI, is the court's "approval" role limited to determining whether the Board acted in good faith and with proper motives, as argued by the Foundation?[6] Does that approval role include placing an evidentiary burden of proof on the Board? If so, what triggers that evidentiary burden of proof?

---

[6] The Foundation argues that the circuit court correctly applied the common law standard found in *Filzen v. Headley*,

¶ 17. Suppose in this case that no one had challenged the proposed amendment. Would an evidentiary hearing have been required? Or, could the circuit court have relied solely on the rationale expressed in the Foundation's petition in providing approval? Is the need for an evidentiary hearing triggered if any interested party with standing objects? And, if an evidentiary hearing is held, who has the burden? Does an objecting party have some sort of initial burden of showing that the proffered reason is inadequate? The League's assertions raise all of these questions, but the League fails to address any of them.

¶ 18. We acknowledge that the League makes some arguments suggesting that the amendment does not meet the Article XI standard required for a change. For example, the League argues that the change will alter the Board in a manner that reduces the diversity of community interests represented on the Board, thus undercutting the effectiveness of the Foundation in carrying out the trust's purpose. But the League fails to present developed argument regarding how the circuit court should have gone about reviewing a proposed amendment under the Article XI standard.

---

252 Wis. 322, 31 N.W.2d 520 (1948), used for review of trustee actions. Under this standard, "[s]o long as trustees act in good faith and from proper motives and within the bounds of a reasonable judgment under the terms and conditions of the trust, the court has no right to interfere" with discretionary decisions. *Id.* at 326. The Foundation focuses on the "good faith" and "proper motives" portion of this test. The Foundation says little about the application of that part of the test requiring "reasonable judgment under the terms and conditions of the trust." Also, the Foundation does not explain why we should conclude that the trust contemplates the common law standard when it includes the phrase "with the approval of the [court]."

¶ 19. The League is the appellant in this case and, as such, it must present developed arguments if it desires this court to address them. In the absence of a developed argument, we decline to decide the meaning of "approval" in Article XI of the trust instrument. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992). Accordingly, we affirm the circuit court.

*By the Court.*—Order affirmed.

¶ 20. DYKMAN, J. (*dissenting*). The majority has concluded that persons who do not like the effect of a statute can agree to disregard it, with the expectation that a court will support their decision. I conclude otherwise. The legislature is entitled to make rules which govern an array of subjects, with the expectation that courts will uphold those rules. Here, the question is the effect of WIS. STAT. § 701.10(2)(b) (2003–04),[1] which governs the administrative provisions of Wisconsin charitable trusts. The statute provides:

> If any administrative provision of a charitable trust or part of a plan set forth by the settlor to achieve the settlor's charitable purpose is or becomes impractical, unlawful, inconvenient or undesirable, and a modification of such provision or plan will enable the trustee to achieve more effectively the basic charitable purpose, the court may by appropriate order modify the provision or plan.

¶ 21. The statute does not conclude with: "Nothing in this section shall prevent modification of a charitable trust pursuant to its terms." More on that later.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 22. The majority sums up its decision in two sentences:

> Nothing in the text of Wis. Stat. § 701.10(2)(b) suggests that it overrides the provisions of a trust. Simply put, if a trust instrument provides a specified procedure for altering administrative provisions of the trust, there is no reason to suppose the legislature intended that § 701.10(2)(b) be used to override such a procedure.

Majority, ¶ 7.

¶ 23. The majority has turned statutory construction on its head. A statute means what it says. Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). Wisconsin Stat. § 701.10(2)(b) permits a court, not the parties, to modify a charitable trust provision or plan. The majority does not explain how it transforms the words "the court" into the words "the Board of Governors." But that is how the majority has amended the statute.

¶ 24. *Kalal* also tells us:

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

*Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 25. Wisconsin Stat. Ch. 701 is entitled "Trusts." Wisconsin Stat. § 701.12 is a closely related section to Wis. Stat. § 701.10(2)(b), and deals with revocation, modification and termination of trusts with the consent

of the settlor. The legislature must have been aware that some trusts contain provisions for revocation, modification or termination within the trust itself, for it provided in § 701.12(3): "Nothing in this section shall prevent revocation, modification or termination of a trust pursuant to its terms or otherwise in accordance with law."

¶ 26. There is nothing like WIS. STAT. § 701.12 in WIS. STAT. § 701.10, which sets out the rules for charitable trusts. The legislature could have permitted charitable trusts to modify their administrative provisions by a provision to that effect in the trust. But it did not. To me, this is hardly accidental, or a drafting glitch.

¶ 27. The legislature is wary of charitable trusts. These trusts are given tax benefits, and often use other people's money to achieve the settlor's designs. The potential for scams exists. So, unlike provisions for other trusts, those for charitable trusts contain a requirement that in a proceeding affecting a charitable trust, notice must be given to the attorney general. WIS. STAT. § 701.10(3)(b). This legislative concern is also exhibited in § 701.10(2)(b), where the power to modify an administrative provision of a charitable trust is given to the court, without a word about the trust's provisions for modification. My conclusion is that the legislature knowingly required charitable trusts to obtain a court order to modify the trust's administrative provisions.

¶ 28. We examined a conflict between a statute and a charitable trust provision in *Weinberger v. Bowen*, 2000 WI App 264, 240 Wis. 2d 55, 622 N.W.2d 471. There, the situation was reversed. The charitable trust provision prohibited altering, amending or modifying

the trust. WISCONSIN STAT. § 701.12 authorized the settlor and all beneficiaries of a trust to revoke, modify or terminate the trust.

¶ 29. Using the reasoning the majority here uses, one would expect that in *Weinberger*, we would have held that the terms of the charitable trust trumped the statute. But that is not what we did. We said: "We agree with the circuit court's holding that WIS. STAT. § 701.12(1) clearly and unambiguously allows for the revocation, modification or termination of a trust upon the written consent of the settlor and all the trust beneficiaries." *Weinberger*, 240 Wis. 2d 55, ¶ 11. Were I to write a majority opinion here, I would use much the same language. I would say: "We agree with Judge Bartell's conclusion that WIS. STAT. § 701.10(2)(b) clearly and unambiguously permits the circuit court and only the circuit court to modify the Foundation trust's administrative provisions."[2] But I am not writing a majority opinion. I therefore respectfully dissent.

---

[2] Judge Bartell was originally assigned this case, but recused herself midway in the case. Prior to her recusal, she had concluded: "[T]he standards set forth in § 701.10(2)(b), Stats., apply to this court as it considers whether to grant approval to the amendment to the Trust Agreement as requested by the [Foundation]."